UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

W. TODD JENSEN,                                        19-cv-657 (RA)

               *Plaintiff*,

       -against-

AR GLOBAL INVESTMENTS, LLC,
AR CAPITAL, LLC,
ARC ADVISORY SERVICES, LLC,
AMERICAN REALTY CAPITAL ADVISORS, LLC,
HEALTHCARE TRUST ADVISORS, LLC,
AMERICAN REALTY CAPITAL HEALTHCARE
TRUST III ADVISORS, LLC,
BELLEVUE CAPITAL PARTNERS, LLC and
AMERICAN REALTY CAPITAL II, LLC,

             *Defendants.*
----------------------------------------------------------------X


# Plaintiff's Memorandum of Law in Opposition to Defendants' Pre-answer Motion to Dismiss


                     Respectfully submitted,

                     Law Offices of Scott A. Lucas
                     250 Park Avenue
                     20th Floor
                     New York, New York 10177
                     (212) 983-6000
                     *Attorneys for Plaintiff W. Todd Jensen*

(i)

## TABLE OF CONTENTS

Page

**Introduction** . . . . . . . . . . . 1

**Point I**

**The Idea That § 193 Does *Not* Bar Wholesale Wage Thefts is Contrary to Both
the Letter and Spirit of § 193; Creates an Irreconcilable Conflict With § 198(3);
and is Foreclosed by Binding Court of Appeals' Precedent** . . . 2

**Point II**

**The Idea That a Defendant Can Defeat § 193 Liability
Merely by Denying That it Owes the Amount it Owes
is Foreclosed by the Language of Article 6
and by Binding Court of Appeals' Precedent** . . . . . 5

**Point III**

**The Argument That as a Matter of Law Jensen's 100% Non-discretionary
Profits Bonus Wasn't "Earned" Fails for Four Separate Reasons** . . 9

    **A.  Defendants' Motion Ignores the Complaint's Well-Pleaded Allegations** 9

    **B.  The Case Law Confirms That Profits-Based Bonuses can be "Earned"** 10

    **C.  The Issue of Whether Unpaid Compensation Constitutes a Discretionary
       Bonus or Nonforfeitable Earned Wages is a Question of Fact** . . 17

    **D.  Incentive Compensation is "Earned" When the Right to Payment
       is Vested and Not Conditioned on Some Future Occurrence
       or Left to the Employer's Discretion** . . . . . 18

**Point IV**

**Any Argument That § 198(3)'s Post-*Gottlieb* Rights-Affirming or Rights-Creating
Language Does *Not* Mean What it Says is Incorrect as a Matter of Law** . 19

(ii)

**Point V**

**The Argument That § 198-c(3)'s Exception to *Criminal* Liability
Shelters Offending Employers From *Civil* Liability Under §§ 193 and 198
for Failing to Pay Earned Severance and Benefits Creates
an Irreconcilable Conflict Between Article 6's Provisions,
and Violates the Courts of Appeals' Core Teaching That
One Section's Exclusions do Not Apply to Other Sections** . . . 24

**Point VI**

**To the Extent the Law is Unsettled, That is Also
an Appropriate Basis for Denying Defendants' Pre-answer Motion** . . 25

**Conclusion** . . . . . . . . . . . 25

(iii)

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aledia v. HSH Nordbank AG*, 2009 U.S. Dist. LEXIS 24953, at *4-7
 (S.D.N.Y. Mar. 23, 2009)   .   .   .   .   .   .   .   .   3, 17, 19

*Altamirano v. Omni Childhood Ctr., Inc.*, 51 Misc. 3d 1213(A) (N.Y. Sup. 2012)  .   4

*In re Angello v. Labor Ready*, 7 N.Y.3d 579, 586 (2006)   .   .   .   .   .   4

*Arthur the Dog v. U.S. Merch. Inc.*, 2007 U.S. Dist. LEXIS 63885, at *19
 (E.D.N.Y. Aug. 28, 2007) (Bianco, J.)   .   .   .   .   .   .   .   7, 12

*Auffarth v. Herald Nat'l Bank*, 2015 N.Y. Misc. LEXIS 3598, *22-23 (N.Y. Sup. 2015)   4, 8

*Bader v. Wells Fargo Home Mortg., Inc.*, 773 F. Supp. 2d 397, 415 (S.D.N.Y. 2011)   3, 17

*Bank of N.Y. Tr. Co. v. Franklin Advisers, Inc.*, 726 F.3d 269, 278 (2d Cir. 2013)  .   23

*Cabrera v. 1560 Chirp Corp.*, 2017 U.S. Dist. LEXIS 33380, at *13 (S.D.N.Y.
 Mar. 6, 2017),   adopted 2017 U.S. Dist. LEXIS 53368, at *1 (S.D.N.Y. Apr. 6, 2017)   21

*Carlson v. Katonah Capital, L.L.C.*, 10 Misc.3d 1076[A], 814 N.Y.S.2d 889
 (N.Y. Sup. 2006)   .   .   .   .   .   .   .   .   .   .   4

*Cavalotti v. Daddyo's BBQ, Inc.*, 2018 U.S. Dist. LEXIS 154918, at *40-41
 (E.D.N.Y. Sep. 8, 2018)   .   .   .   .   .   .   .   .   .   22

*Chenensky v. N.Y. Life Ins. Co.*, 2012 U.S. Dist. LEXIS 8986, at *9
 (S.D.N.Y. Jan. 10, 2012)   .   .   .   .   .   .   .   .   .   8

*Commonwealth of the N. Mar. I. v. Canadian Imperial Bank of Commerce*,
 21 N.Y.3d 55, 61 (2013)   .   .   .   .   .   .   .   .   .   23

*Contrera v. Langer*, 314 F. Supp. 3d 562, 569-70 (S.D.N.Y. 2018)  .   .   .   20

*D'Amato v. Five Star Reporting, Inc.*, 80 F. Supp. 3d 395, 414-15 (E.D.N.Y. 2015)   4, 8

*Danovitch v. Gersten Savage LLP*, 2013 N.Y. Misc. LEXIS 2977, at *11
 (N.Y. Sup. 2013)   .   .   .   .   .   .   .   .   .   .   21

(iv)

*Di Bari v. Morellato & Sector USA, Inc.*, 2012 N.Y. Misc. LEXIS 3875, at *3-4
 (N.Y. Sup. 2012)   .   .   .   .   .   .   .   .   .   4

*Denhaese v. Buffalo Spine Surgery, PLLC*, 144 A.D.3d 1519 (4th Dept. 2016)   .   3, 18

*DeWitt Stern Grp., Inc. v. Eisenberg*, 257 F. Supp. 3d 542, 591 (S.D.N.Y. 2017),
 *aff'd* 734 F. App'x 48 (2d Cir. 2018)   .   .   .   .   .   18

*Doctors Council v. N.Y.C. Employees' Ret. Sys.*, 71 N.Y.2d 669, 674 (1988)   .   22

*Eschelbach v. CCF Charterhouse/Credit Commer. de Fr.*, 2006 U.S. Dist. LEXIS 50672,
 at *13 (S.D.N.Y. July 25, 2006)   .   .   .   .   .   .   3

*Esmilla v. Cosmopolitan Club*, 936 F. Supp. 2d 229, 252 (S.D.N.Y. 2013)   .   .   4

*Farricker v. Penson Dev., Inc.*, 2009 U.S. Dist. LEXIS 27484, at *21
 (S.D.N.Y. Mar. 31, 2009)   .   .   .   .   .   .   .   4

*Figura v. N. Country Janitorial, Inc.*, 53 Misc. 3d 881, 884 (N.Y. Sup. 2016)   .   13, 19

*Fischkoff v. Iovance Biotherapeutics, Inc.*, 2018 U.S. Dist. LEXIS 112839, at *13-14
 (S.D.N.Y. July 5, 2018)   .   .   .   .   .   .   .   3, 13, 14, 19

*Freedom Home Mortg. Corp. v. Platinum Home Mortg. Corp.*,
 2015 U.S. Dist. LEXIS 39816, at *34-35 (N.D.N.Y. Mar. 30, 2015).   .   .   13, 19

*Freeman v. HSBC Holdings PLC*, 2018 U.S. Dist. LEXIS 127289, at *153
 (E.D.N.Y. 2018)   .   .   .   .   .   .   .   .   25

*Friedman v. Arenson Office Furnishings Inc.*, 2014 N.Y. Misc. LEXIS 2337, at *3-6
 (N.Y. Sup. 2014)   .   .   .   .   .   .   .   .   8

*Friedman v. Arenson Office Furnishings Inc.*, 129 A.D.3d 525, 525 (1st Dept. 2015)   3, 8, 13

*Giuntoli v Garvin Guybutler Corp.*, 726 F Supp 494, 496, 509 (S.D.N.Y. 1989)   .   7, 11-15, 17

*Gold v. Am. Med. Alert Corp.*, 2015 U.S. Dist. LEXIS 108122,
 at *11 (S.D.N.Y. Aug. 13, 2015)   .   .   .   .   .   .   4

*Goldberg v. Jacquet*, 667 F. App'x 313, 314 (2d Cir. 2016)   .   .   .   .   4

*Grewal v. Cuneo*, 2016 U.S. Dist. LEXIS 8349, at *19 (S.D.N.Y. Jan. 25, 2016) (Abrams, J.)   4

*Grober v. Bronson*, 2013 N.Y. Misc. LEXIS 696, at *19-21 (N.Y. Sup. 2013)   .   4, 14

(v)

*Hausman v. Buckley*, 299 F.2d 696, 701 (2d Cir. 1962)   .   .   .   .   22

*Hernandez v. NJK Contractors, Inc.*, 2015 U.S. Dist. LEXIS 57568, at *123
  (E.D.N.Y. May 1, 2015)   .   .   .   .   .   .   .   21

*Jacobus v. Colgate*, 217 N.Y. 235, 242 (1916) (Cardozo, J.)   .   .   .   22

*Khurana v. Wahed Invest, LLC*, 2019 U.S. Dist. LEXIS 31554, at *35-36
  (S.D.N.Y. Feb. 26, 2019)   .   .   .   .   .   .   2, 3

*Kieper v. The Fusco Grp. Partners Inc.*, 152 A.D.3d 1030, 1033 (3d Dept. 2017)   .   3

*Kletter v. Fleming*, 32 A.D.3d 566, 567 (3d Dept. 2006)   .   .   .   5

*Kolchins v. Evolution Mkts., Inc.*, 128 A.D.3d 47, 64 (1st Dept. 2015)   .   .   17

*Kolchins v. Evolution Mkts., Inc.*, 31 N.Y.3d 100, 109 (2018)   .   .   .   3, 7, 17, 18

*Konidaris v. Aeneas Capital Mgmt., LP*, 8 A.D.3d 244, 244 (2d Dept. 2004)   .   3

*Konsker v. Cushman & Wakefield, Inc.*, 2016 N.Y. Misc. LEXIS 1833, at *12
  (N.Y. Sup. 2016)   .   .   .   .   .   .   .   21

*Konsker v. Cushman & Wakefield, Inc.*, 2018 N.Y. Misc. LEXIS 1102, at *2, 6
  (N.Y. Sup. 2018)   .   .   .   .   .   .   .   21-22

*Kroshnyi v. U.S. Pack Courier Servs.*, 771 F.3d 93, 96 and n.3 (2d Cir. 2014)   .   4, 20, 21

*Ladau v. The Hillier Grp., Inc.*, 2004 U.S. Dist. LEXIS 5339, at *16
  (S.D.N.Y. Mar. 30, 2004)   .   .   .   .   .   .   8

*Levin v. Tiber Holding Corp.*, 277 F.3d 243, 253 (2d Cir. 2002)   .   .   .   3

*Levion v. SociÉtÉ GÉnÉrale*, 822 F. Supp. 2d 390, 404 (S.D.N.Y. 2011),
  aff'd 503 F. App'x 62, 64 (2d Cir. 2012)   .   .   .   .   16

*MacNeil v. Berryhill*, 869 F.3d 109, 113 (2d Cir. 2017)   .   .   .   5, 23

*Mercedes v. Tito Transmission Corp.*, 2018 U.S. Dist. LEXIS 208189,
  at *13 (S.D.N.Y. Dec. 6, 2018), adopted 2019 U.S. Dist. LEXIS 7900, at *1
  (S.D.N.Y. Jan. 4, 2019)   .   .   .   .   .   .   21

*Mestrovic v. Serum Versus Venom, LLC*, 2015 N.Y. Misc. LEXIS 3903, at *12-13
  (N.Y. Sup. 2015)   .   .   .   .   .   .   .   4

(vi)

*Miteva v. Third Point Mgmt. Co.,* 323 F. Supp. 2d 573 (S.D.N.Y. 2004)   .   .   3

*In re OnBank & Trust Co.*, 688 N.E.2d 245, 247 (1997)   .   .   .   .   23

*Orgill v. Ingersoll-Rand Co.*, 110 A.D.3d 573, 573-74 (1st Dept. 2013)   .   .   8

*Pachter v. Bernard Hodes Grp., Inc.,* 505 F.3d 129, 132 n.3 (2d Cir. 2007) .   .   24

*Pachter v. Bernard Hodes Grp., Inc.*, 10 N.Y.3d 609, 614 (2008)   .   .   6, 24, 25

*Patterson v. J.P. Morgan Chase & Co.*, 2004 U.S. Dist. LEXIS 17135, at *29
  (S.D.N.Y. Aug. 26, 2004)   .   .   .   .   .   .   .   .   .   17

*Perelli v. Liberty Mut. Ins. Co.*, 2013 N.Y. Misc. LEXIS 901, at *2-7
  (N.Y. Sup. 2013)   .   .   .   .   .   .   .   .   .   21

*P & L Grp., Inc. v. Garfinkel*, 150 A.D.2d 663, 664 (2d Dept. 1989)   .   .   3

*Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 264 (2d Cir. 1999).   .   .   4, 21

*Ryan v. Kellogg Partners Institutional Servs.*, 79 A.D.3d 447, 448 (1st Dept. 2010)   17

*Ryan v. Kellogg Partners Institutional Servs.*, 19 N.Y.3d 1, 16 (2012)   .   .   *Passim*

*Saca v. Dav-El Reservation Sys.*, 600 F. Supp. 2d 483, 488 (E.D.N.Y. 2009)   .   25

*Samuels v. Thomas Crimmins Contracting Co.*, 1993 U.S. Dist. LEXIS 1336, at *22
  (S.D.N.Y. 1993) (Sotomayor, J.)   .   .   .   .   .   .   .   16, 17

*Scarpinato v. E. Hampton Point Mgmt. Corp.*, 2015 N.Y. Misc. 3206, *8
  (N.Y. Sup. 2015)   .   .   .   .   .   .   .   .   .   4

*Shielcrawt v. Moffett*, 294 N.Y. 180, 189 (1945)   .   .   .   .   .   22

*Short v. Churchill Ben. Corp.*, 2016 U.S. Dist. LEXIS 48041, at *46-47
  (E.D.N.Y. Apr. 8, 2016)   .   .   .   .   .   .   .   .   .   8

*Spinac v. Carlton Grp., LTD.*, 99 A.D.3d 603, 603 (1st Dept. 2012).   .   .   4, 8

*Supra USA, Inc. v. Samsung Elecs. Co.*, 1987 U.S. Dist. LEXIS 10406, at *2
  (S.D.N.Y. 1987)   .   .   .   .   .   .   .   .   .   25

*Tini v. AllianceBernstein L.P.*, 108 A.D.3d 409, 410 (1st Dept. 2013)   .   .   21

(vii)

*Tischmann v. ITT/Sheraton Corp.*, 882 F. Supp. 1358, 1370 (S.D.N.Y. 1995)         .         15

*Tortorella v. Postworks N.Y. LLC*, 2011 N.Y. Misc. LEXIS 3603, *19 (N.Y. Sup. 2011)         4

*Truelove v. Northeast Capital & Advisory Inc.*, 268 A.D.2d 648, 649 (3d Dep't 2000)         14

*Truelove v. Ne. Capital & Advisory, Inc.*, 95 N.Y.2d 220, 224 (2000)         .         .         *Passim*

*Tuttle v. Geo. McOuesten Co., Inc.*, 227 A.D.2d 754 (3rd Dep't 1996)         .         .         3

*United States v. Quality Stores, Inc.*, 134 S. Ct. 1395, 1401 (2014)   .         .         .         23

*Veera v. Ambac Plan Admin. Comm.*, 769 F. Supp. 2d 223, 229 (S.D.N.Y. 2011)   .         25

*Wachter v. Kim*, 82 A.D.3d 658 (1st Dep't 2011)         .         .         .         .         .         3

*Walpert v. Jaffrey*, 127 F.Supp.3d 105, 135 (S.D.N.Y. 2015)         .         .         .         1

*Walpert v. Jaffrey*, 2016 U.S. Dist. LEXIS 111057, at *22-23 (S.D.N.Y. Aug. 17, 2016),
  adopted 2017 U.S. Dist. LEXIS 40407, at *1 (S.D.N.Y. Mar. 21, 2017)   .         .         3

*Weinreich v. Sandhaus,* 850 F. Supp. 1169, 1177-78 (S.D.N.Y. 1994)         .         .         7

*Wilder v. May Dep't Stores Co.*, 23 A.D.3d 646, 647 (2d Dept. 2005)         .         .         8

(viii)

**Statutes**

N.Y. Labor Law § 190 . . . . . . . . *Passim*

N.Y. Labor Law § 193 . . . . . . . . *Passim*

N.Y. Labor Law § 195 . . . . . . . . 6

N.Y. Labor Law § 198 . . . . . . . . *Passim*

New York Labor Law § 198-c . . . . . . . 24-25

N.Y. Stat. § 98 . . . . . . . . . 5, 23

N.Y. Stat. § 193 . . . . . . . . . 23

**Articles**

Labor Law Article 6: A Misunderstood Law That Fully Protects All Employees' Wages, 80 Alb. L. Rev. 1355 (2016/2017)

Labor Law Art. 6: Is There a Difference Between "Deducting" and "Failing to Pay" Wages?, New York Law Journal, Nov. 14, 2018, p. 4

**Introduction**

Jensen worked as an executive for Defendants.  His Employment Agreement guaranteed him an annual 4% Profits Bonus and, upon termination, a 4% Accrued Profits Bonus, Accrued Benefits, and Severance Pay (unless the termination was for narrowly-defined "Cause"). By August 2018 the payment of Jensen's previously-earned and vested mandatory 2017 Profits Bonus was five months overdue.  Defendants elected to terminate Jensen's employment *not*-for-cause, and undertook to calculate everything they owed him.

Later, a disagreement ensued as to the correct number of unused vacation days Jensen was entitled to be paid for, with Defendants taking the position that their own HR records were inaccurate.

Thereafter, Defendants decided to give themselves a windfall by targeting *all* of Jensen's unpaid earnings (i.e., his 2017 4% Profits Bonus, his 4% Accrued Profits Bonus, his Accrued Benefits, and his Severance Pay—*all of which were earned, vested and 100% non-discretionary*). To accomplish that wholesale wage theft, they purported to retroactively "re-characterize" Jensen's termination as a "for-Cause" termination. Defendants' attempt to do so was invalid *as a matter of law* for the reasons set forth in the Amended Complaint ("Complaint" or "Cplt."). See Cplt. ¶¶ 81-111.

"Plaintiff's cause of action under New York Labor Law ("NYLL") is dependent upon the success of his breach of contract claim." *Walpert v. Jaffrey*, 127 F.Supp.3d 105, 135 (S.D.N.Y. 2015).  As detailed below, Defendants' motion to dismiss Plaintiff's NYLL claims should be denied as a matter of law because:

I.     The idea that § 193 does *not* bar wholesale wage thefts is contrary to both the letter and spirit of § 193; is foreclosed by binding Court of Appeals' precedent; and creates an irreconcilable conflict with § 198(3).

II.     The idea that a defendant can defeat § 193 liability merely by denying that it owes the amount it owes is foreclosed by the language of Article 6 and by binding Court of Appeals' precedent.

III.    The argument that as a matter of law Jensen's 100% non-discretionary Profits Bonus wasn't "earned" fails because: **(A)** the Complaint's well-pleaded allegations demonstrate that the profits-based bonus was an integral part of Jensen's compensation and was expressly linked to his service as President and CEO of two of the Company's profit centers; **(B)** the case law confirms that a profits bonus can be "earned"; **(C)** whether unpaid compensation constitutes a discretionary bonus or nonforfeitable earned wages is a question of fact; and **(D)** incentive compensation is also earned when the right to payment is vested and not conditioned on some future occurrence or left to the employer's discretion.

IV.     Any argument that § 198(3)'s post-*Gottlieb* rights-affirming or rights-creating language does *not* mean what it says is incorrect as a matter of law.

V.      The argument that § 198-c(3)'s exception to *criminal* liability shelters offending employers from *civil* liability under §§ 193 and 198 for failing to pay earned severance and benefits creates an irreconcilable conflict between Article 6's provisions, and violates the Courts of Appeals' core teaching that one section's exclusions do not apply to other sections.

VI.     To the extent the law is unsettled, that is also a factor that weighs against dismissal.


### Point I

**The Idea That § 193 Does *Not* Bar Wholesale Wage Thefts is Contrary to Both the Letter and Spirit of § 193; Creates an Irreconcilable Conflict With § 198(3); and is Foreclosed by Binding Court of Appeals' Precedent**

Defendants' first argument is that NYLL § 193—which broadly prohibits "any" unauthorized deduction from wages—does not bar wholesale wage thefts.  While this view has been adopted by some courts, it is foreclosed by binding Court of Appeals' precedent.  *Ryan v. Kellogg Partners Institutional Servs.*, 19 N.Y.3d 1, 16 (2012) ("Since Ryan's bonus therefore constitutes 'wages' within the meaning of Labor Law § 190(1), Kellogg's neglect to pay him the bonus violated Labor Law § 193[.]"); see also *Khurana v. Wahed Invest, LLC*, 2019 U.S. Dist.

LEXIS 31554, at *35-36 (S.D.N.Y. Feb. 26, 2019) (acknowledging that *Ryan* constitutes binding

precedent); *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 253 (2d Cir. 2002) (a federal court

sitting in diversity "must follow" the holdings of the New York Court of Appeals and "must

reject" inconsistent rulings).

Moreover, wholesale wage thefts violate *both* the letter *and* spirit of § 193. See Labor

Law Article 6: A Misunderstood Law That Fully Protects All Employees' Wages, 80 Alb. L.

Rev. 1355 (2016/2017) and Labor Law Art. 6: Is There a Difference Between "Deducting" and

"Failing to Pay" Wages?, New York Law Journal, Nov. 14, 2018, p. 4, the analysis of which is

incorporated by reference.

In addition, while some courts believe that recognizing a "total withholding" exception to

§ 193 is the majority view, that is highly doubtful, as the Court of Appeals, all four Appellate

Divisions, and numerous trial courts have issued decisions indicating otherwise.[1]  And while

---

[1] See, e.g., *Ryan*, *supra*; *Kolchins v. Evolution Mkts., Inc.*, 31 N.Y.3d 100, 109 (2018) (citing § 193 for the proposition that "to the extent plaintiff's production bonus constituted 'earned wages' under the Labor Law, it was not subject to forfeiture."); *Kieper v. The Fusco Grp. Partners Inc.*, 152 A.D.3d 1030, 1033 (3d Dept. 2017); *Denhaese v. Buffalo Spine Surgery, PLLC*, 144 A.D.3d 1519 (4th Dept. 2016); *Friedman v. Arenson Office Furnishings Inc.*, 129 A.D.3d 525, 525 (1st Dept. 2015); *Wachter v. Kim*, 82 A.D.3d 658 (1st Dep't 2011); *Konidaris v. Aeneas Capital Mgmt., LP*, 8 A.D.3d 244, 244 (2d Dept. 2004); *Tuttle v. Geo. McOuesten Co., Inc.*, 227 A.D.2d 754 (3rd Dep't 1996); *P & L Grp., Inc. v. Garfinkel*, 150 A.D.2d 663, 664 (2 Dept. 1989); *Khurana v. Wahed Invest, LLC*, *supra*, 2019 U.S. Dist. LEXIS 31554, at *35-36 (S.D.N.Y. Feb. 26, 2019) (expressing apparent disagreement with *Ryan*, but acknowledging that *Ryan* constitutes binding precedent); *Fischkoff v. Iovance Biotherapeutics, Inc.*, 2018 U.S. Dist. LEXIS 112839, at *13-14 (S.D.N.Y. July 5, 2018); *Walpert v. Jaffrey*, 2016 U.S. Dist. LEXIS 111057, at *22-23 (S.D.N.Y. Aug. 17, 2016) ("defendants are liable under NYLL § 193(1) because they failed to make payments owed to plaintiff pursuant to the Agreement"), adopted 2017 U.S. Dist. LEXIS 40407, at *1 (S.D.N.Y. Mar. 21, 2017); *Quinones v. PRC Mgmt. Co. LLC*, 2015 U.S. Dist. LEXIS 88029, at *13-16 (S.D.N.Y. July 7, 2015) ("Once the compensation is earned or vested, an employer's 'neglect to pay' those 'wages' violates NYLL § 193."); *Eschelbach v. CCF Charterhouse/Credit Commer. de Fr.*, 2006 U.S. Dist. LEXIS 50672, at *13 (S.D.N.Y. July 25, 2006) ("[I]n *Miteva v. Third Point Mgmt. Co.*, 323 F. Supp. 2d 573 (S.D.N.Y. 2004), after an exhaustive analysis of Article 6 of the Labor Law, of which Section 193(1) is a part, and the case law interpreting its provisions, Judge Marrero concluded that an analyst who allegedly had been promised a bonus of $650,000, but was terminated four days before it was due, could maintain a claim under Sections 193(1) and 198. *Id.* at 577, 585. None of the other state or federal cases addressing the reach of Article 6 of the Labor Law contains as detailed -- or as persuasive -- a discussion of the statutory language."); *Bader v. Wells Fargo Home Mortg., Inc.*, 773 F. Supp. 2d 397, 415 (S.D.N.Y. 2011) (§ 193 reflects New York's "longstanding policy against the forfeiture of earned but undistributed wages."); *Aledia v. HSH Nordbank AG*, 2009 U.S. Dist. LEXIS 24953, at *4-7 (S.D.N.Y.

Defendants claim that "binding" and "firmly rooted" Second Circuit precedent holds that § 193 doesn't bar the "total withholding" of wages, the lone case they cite for that proposition (*Goldberg v. Jacquet*, 667 F. App'x 313, 314 (2d Cir. 2016)) is a *non*-precedential summary order. Further, as detailed in Point IV below, the issue is likely academic because the Second Circuit—in *reported* decisions—has interpreted a different section of Article 6 (§ 198) as providing an Article 6 remedy. See *Kroshnyi v. U.S. Pack Courier Servs.*, 771 F.3d 93, 96 and n.3 (2d Cir. 2014); *Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 264 (2d Cir. 1999).

The view that § 193 *only* protects against small "targeted deductions" (*Gold v. Am. Med. Alert Corp.*, 2015 U.S. Dist. LEXIS 108122, at *11 (S.D.N.Y. Aug. 13, 2015)) is contrary to the rationale of this Court's decision in *Grewal v. Cuneo*, 2016 U.S. Dist. LEXIS 8349, at *19 (S.D.N.Y. Jan. 25, 2016) (Abrams, J.) (§ 193's goal is "to afford strong protection of the wages of employees"), and also makes no sense because it would mean that an employer contemplating keeping part of an employee's wages could confer § 193 immunity upon itself by keeping *all* of her wages, i.e., the most extreme form of the evil § 193 was designed to guard against. See *In re Angello v. Labor Ready*, 7 N.Y.3d 579, 586 (2006) (the inequity the Legislature sought to prevent in enacting § 193 was employers reaping the benefit of employees' earned wages).

---

Mar. 23, 2009); *Farricker v. Penson Dev., Inc.*, 2009 U.S. Dist. LEXIS 27484, at *21 (S.D.N.Y. Mar. 31, 2009); *Mestrovic v. Serum Versus Venom, LLC*, 2015 N.Y. Misc. LEXIS 3903, at *12-13 (N.Y. Sup. 2015); *Scarpinato v. E. Hampton Point Mgmt. Corp.*, 2015 N.Y. Misc. 3206, *8 (N.Y. Sup. 2015) ("It has been held that the failure to pay wages due is deemed a deduction under the statute."); *Auffarth v. Herald Nat'l Bank*, 2015 N.Y. Misc. LEXIS 3598, *22-23 (N.Y. Sup. 2015); *Esmilla v. Cosmopolitan Club*, 936 F. Supp. 2d 229, 252 (S.D.N.Y. 2013); *Tortorella v. Postworks N.Y. LLC*, 2011 N.Y. Misc. LEXIS 3603, *19 (N.Y. Sup. 2011) ("[§ 193] prohibits the withholding of wages and not simply a specific deduction"); *Grober v. Bronson*, 2013 N.Y. Misc. LEXIS 696, at *19-21 (N.Y. Sup. 2013); *Di Bari v. Morellato & Sector USA, Inc.*, 2012 N.Y. Misc. LEXIS 3875, at *3-4 (N.Y. Sup. 2012); *Altamirano v. Omni Childhood Ctr., Inc.*, 51 Misc. 3d 1213(A) (N.Y. Sup. 2012) (rejecting distinction between deducting and withholding wages under § 193); *Carlson v. Katonah Capital, L.L.C.*, 10 Misc.3d 1076[A], 814 N.Y.S.2d 889 (N.Y. Sup. 2006); see also *D'Amato v. Five Star Reporting, Inc.*, 80 F. Supp. 3d 395, 414-15 (E.D.N.Y. 2015) (liability under § 193 for non-payment of commissions depends on whether plaintiff contractually entitled to commissions); *Spinac v. Carlton Grp., LTD.*, 99 A.D.3d 603, 603 (1st Dept. 2012) (to same effect).

The view that § 193 *only* protects against small "targeted deductions" is also untenable because it is not even clear what a "targeted" deduction means. For example, what if the employer is upset about "spoiled merchandise" but doesn't mention it and simply keeps half of the employee's paycheck, or all of it? What if being upset about "spoiled merchandise" accounts for 10% of the employer's motive for keeping the employee's wages, and greed accounts for the other 90%? Would the employee only be allowed to recover 10% of the stolen wages? And how would the various mental processes occurring inside the employer's head be measured? Should courts give a pass to employers whose self-interested thinking causes them to underestimate their wage payment obligations when even employers who prove they acted in "good faith" are liable for unpaid wages and attorney's fees (but not liquidated damages)? Labor Law § 198(1-a). To ask these questions is to answer them.

Finally, as discussed in Point IV below, § 193 must be harmonized with § 198(3)'s command that "*All employees shall have the right* to recover full wages, benefits and wage supplements and liquidated damages" because "[a]ll parts of a statute must be harmonized with each other…and effect and meaning must…be given to the entire statute and every part and word thereof." *MacNeil v. Berryhill*, 869 F.3d 109, 113 (2d Cir. 2017) (quoting N.Y. Stat. § 98).

## Point II

### The Idea That a Defendant Can Defeat § 193 Liability Merely by Denying That it Owes the Amount it Owes is Foreclosed by the Language of Article 6 and by Binding Court of Appeals' Precedent

In a footnote, Defendants also suggest that an employer can defeat § 193 liability merely by denying that it owes the amount it owes. See Defendants' Memorandum of Law at page 8, n. 1 (citing *Kletter v. Fleming*, 32 A.D.3d 566, 567 (3d Dept. 2006), which stated that "this dispute

5

as to the calculation of the net amount does not reflect a deduction from wages within the meaning of Labor Law § 193"). Though followed by some courts, that view is manifestly in error, and contrary to both controlling precedent and logic.

To begin with, a wage is either owed or it's not, and employers have a statutory duty to provide their employees with enough information to know how their pay will be determined. NYLL § 195. Moreover, Article 6 provides that liquidated damages will *not* be imposed on employers who establish that their underpayment was the result of a good faith misunderstanding of their legal obligations. NYLL § 198(1-a). If non-compliant employers could avoid § 193 liability altogether merely by disagreeing that they owe the amount they owe, then compliance with Article 6 would become optional in many if not most cases and the central goal of Article 6 would be defeated. After all, how many employers who fail to pay what they owe *admit* that they owe those wages?

But compliance is not optional. To the contrary, where there is a dispute as to how an employee's wages are to be calculated, courts are required to resolve the issue of whether or not the plaintiff was paid the correct amount due in accordance with the parties' express or implied agreement, a process that entails exploring and determining what it was that the parties agreed to. The Court of Appeals has repeatedly concluded as much.

In *Pachter v. Bernard Hodes Grp., Inc.*, 10 N.Y.3d 609, 614 (2008) the Court of Appeals addressed a dispute as to how the plaintiff's commissions should be computed. The Court of Appeals did *not* dismiss the plaintiff's claim on the ground that a dispute over how to calculate commissions was not actionable under § 193. Instead, it held that courts must decide the issue in accordance with the terms of the parties' express agreement, or, if not covered by their express

agreement, then in accordance with the parties' implied agreement based on their course of conduct and applicable common law precepts. *Id.*, 10 N.Y.3d 617-18.

Likewise in *Ryan v. Kellogg Partners Institutional Servs.*, *supra*, 19 N.Y.3d 1, 7 (2012) the Court of Appeals affirmed a finding of § 193 liability notwithstanding the parties' sharply conflicting views as to whether defendant was obligated to pay any bonus, and, if so, whether it was the $20,000 that the defendant offered or the $175,000 that the plaintiff claimed. Notably, the one case that *Ryan* cited to support its conclusion as to when a "bonus" is "earned" (*Giuntoli v Garvin Guybutler Corp.*, 726 F Supp 494, 496, 509 (S.D.N.Y.)) involved "a dispute between [the heads of two 'desks'] concerning the allocation of [profits-based] bonus funds between their respective 'desks'." *Id.*, 726 F.Supp. at 496, 508. In contrast to the difficult to define but nonetheless enforceable bonus in *Giuntoli*, the mandatory Profits Bonus and Accrued Profits Bonus here are based on a specific formula (4% of the two Healthcare Advisors' net profits, Cplt. ¶ 79) which "can easily be defined by reference to an extrinsic standard." *Weinreich v. Sandhaus,* 850 F. Supp. 1169, 1177-78 (S.D.N.Y. 1994) ("The term net profit can easily be defined by reference to an extrinsic standard."); *Arthur the Dog v. U.S. Merch. Inc.*, 2007 U.S. Dist. LEXIS 63885, at *19 (E.D.N.Y. Aug. 28, 2007) (Bianco, J.) (same).

And in *Kolchins v. Evolution Mkts., Inc.*, 31 N.Y.3d 100, 110 (2018) the Court of Appeals addressed sharply disputed versions as to what if any bonus the employer was required to pay, an inquiry that required an analysis of extrinsic evidence bearing on the parties' intentions. Once again, the Court of Appeals did *not* dismiss the plaintiff's claim on the ground that a dispute over how to calculate commissions was not actionable under § 193. Instead, it affirmed the denial of Defendants' motion to dismiss plaintiff's breach of contract claim and

cited § 193 for the proposition that "to the extent plaintiff's production bonus constituted 'earned wages' under the Labor Law, it was not subject to forfeiture." *Id.*, 19 N.Y.3d at 109.

Many other cases confirm that a disagreement as to what is owed or how it is calculated does not defeat a § 193 claim, as the parties to an unpaid wage action will rarely be in agreement on such matters.[2] For example, in *Friedman v. Arenson Office Furnishings Inc.*, 129 A.D.3d 525 (1st Dept. 2015), the First Department affirmed the denial of summary judgment in a § 193 case seeking several years of unpaid profits bonuses where "Plaintiff…claim[ed] that AOF unfairly manipulated the profit calculation each year and that under a proper calculation there would have been a profit" (2014 N.Y. Misc. LEXIS 2337, at *3-6 (N.Y. Sup. 2014)). The First Department found that Defendants' liability hinged on whether "plaintiff can establish that her division earned net profits during the periods in question." *Friedman*, 129 A.D.3d at 525.

Here, of course, the issue is much simpler than in *Friedman* because the parties *agree* that the two Healthcare Advisors generated a net profit while Jensen served as their top executive. Cplt. ¶¶ 115-19. To be sure, the parties disagree about whether the contract provision

---

[2] See, e.g., *Short v. Churchill Ben. Corp.*, 2016 U.S. Dist. LEXIS 48041, at *46-47 (E.D.N.Y. Apr. 8, 2016) (denying summary judgment on § 193 claim because "[u]ltimately, the jury must consider this extrinsic evidence and determine the parties' intent as to whether the 'rate' referred to in the $600 Weekday Base Rate was intended to be Plaintiff's wage or the Bill Rate that Framestore would pay Yurcor."); *D'Amato v. Five Star Reporting, Inc.*, 80 F. Supp. 3d 395, 414-15 (E.D.N.Y. 2015) (denying dismissal of § 193 claim because parties disputed what qualified as a "new sales" under commission formula, and their agreement was ambiguous) (citing *Chenensky v. N.Y. Life Ins. Co.*, 2012 U.S. Dist. LEXIS 8986, at *9 (S.D.N.Y. Jan. 10, 2012)); *Orgill v. Ingersoll-Rand Co.*, 110 A.D.3d 573, 573-74 (1st Dept. 2013) (denying summary judgment in § 193 case because parties disputed whether or not 'Shared General Expense' was "part of the calculation of the employees' commissions"); *Wilder v. May Dep't Stores Co.*, 23 A.D.3d 646, 647 (2d Dept. 2005) (to similar effect; certifying class); *Spinac v. Carlton Grp., LTD.*, 99 A.D.3d 603, 604 (1st Dept. 2012) (modifying grant of partial summary judgment in § 193 case, 2011 N.Y. Misc. LEXIS 3463, at *4, because it involved, inter alia, "parties' bona fide dispute as to the extent of commissions owing"); *Auffarth v. Herald Nat'l Bank*, 2015 N.Y. Misc. LEXIS 3598, at *23 (N.Y. Sup. 2015) (denying dismissal of § 193 claim because "[t]here is contention among the parties as to whether the first full year targets/goals have been met by Mr. Perrin."); *Ladau v. The Hillier Grp., Inc.*, 2004 U.S. Dist. LEXIS 5339, at *16 (S.D.N.Y. Mar. 30, 2004) ("summary judgment cannot be entered on the basis of Defendant's assertion that 'brought in' means 'solely responsible.'").

basing Jensen's Profits Bonus on the *Healthcare Advisors'* net profits should be enforced as written (Jensen's position) or whether it should be altered to allow the Healthcare Advisors' net profits to be offset by an affiliated entity's losses (Defendants' position). But surely such a disagreement cannot immunize Defendants from § 193 liability for refusing to pay Jensen *anything at all*.

### Point III

### The Argument That as a Matter of Law Jensen's 100% Non-discretionary Profits Bonus Wasn't "Earned" Fails for Four Separate Reasons

The argument that as a matter of law Jensen's 100% non-discretionary Profits Bonus wasn't "earned" fails because: **(A)** the Complaint's well-pleaded allegations demonstrate that the profits-based bonus was an integral part of Jensen's compensation and was expressly linked to his service as President and CEO of two of the Company's profit centers; **(B)** the case law confirms that a profits bonus can be "earned"; **(C)** whether unpaid compensation constitutes a discretionary bonus or nonforfeitable earned wages is a question of fact; and **(D)** incentive compensation is also earned as a matter of law where the right to payment is fully vested and not conditioned on some future occurrence or left to the employer's discretion.

#### A. Defendants' Motion Ignores the Complaint's Well-Pleaded Allegations

Defendants' motion omits many of the Complaint's critical factual allegations.

In clear contrast to the partly-discretionary "Annual Bonus," which is based in part on overall performance of *the Company* (i.e., not just the two Healthcare Advisors for which Jensen served as President and CEO), Jensen's earned, mandatory and fully-vested 4% Profits Bonus and Accrued Profits Bonus are based *solely* on the net profits of the two Healthcare Advisors for which Jensen served as President and CEO.  Cplt. ¶¶ 120; 137.

9

These mandatory Profits Bonuses were such an integral part of Jensen's work compensation that Jensen: **(A)** would not have agreed to be re-employed after having given his notice of non-renewal of the Employment Agreement unless the Company agreed to pay an annual mandatory 4% Profits Bonus, which it agreed to do; and **(B)** expected the mandatory 4% Profits Bonuses to exceed his salary, and, consistent with that expectation, his earned but unpaid Profits Bonuses did exceed his salary.  Cplt. ¶ 138.

Jensen's mandatory 4% Profits Bonus was based on the results he achieved as President and CEO (interim and otherwise) for two specific Healthcare Advisors that served as critical profit centers for the Company.  Cplt. ¶¶ 79, 139. More specifically, the Healthcare Advisors' net income depended primarily on the asset management fees they received, and Jensen was the executive officer primarily responsible for acquiring the properties on which the Healthcare Advisors' asset management fees (the principal source of the Healthcare Advisors' income) were based, and for aggregating those assets.  Cplt. ¶ 140.

As President and CEO (interim and otherwise), Jensen's responsibility for the profitability of the two Healthcare Advisors was so paramount that Jensen agreed to also serve as, and did serve as, President and CEO (interim and otherwise) of the two healthcare REITs that those entities advised.  Cplt. ¶ 141.  (While there was a 3½ month period between when Jensen became President and when he also filled the CEO role, Cplt. ¶¶ 64, 67-68, it would be wrong to assume that someone else filled the CEO role in that period.)

### B.    The Case Law Confirms That Profits-Based Bonuses can be "Earned"

Defendants fail to mention most of the above factual allegations in their motion.  Instead, they argue, in essence, that as a matter of law a mandatory percentage-based bonus cannot be "earned" if it is affected by any factors besides the plaintiff's own exertions.  As detailed below,

this view is contrary to law and makes no sense, as few things today are produced or serviced solely by a single person.

In a modern economy, production and service results depend on the combined efforts of many people, including a broad range of support staff, without whose efforts the production or sales could never come to fruition. Such production and service results also depend on a broad range of additional factors outside an individual employee's control, such as, for example, the market, budgetary allocations, advertising choices, quality and volume of merchandise available, chargeback policies, and much more.

The Court of Appeals explored the circumstances under which a non-discretionary "bonus" is "earned" in *Ryan v. Kellogg Partners Institutional Servs.*, 19 N.Y.3d 1, 16 (2012). *Ryan* cited one case to support its conclusion as to when such a "bonus" is "earned," *Giuntoli v Garvin Guybutler Corp.*, 726 F Supp 494, 509 (S.D.N.Y.), and *Giuntoli* squarely *rejected* the argument "that incentive bonuses, based on profitability, also do not fall under the NYLL's definition of 'wages'." *Id.* Instead, as *Giuntoli* made clear, the dispositive issue was whether those bonuses were "already due and vested[.]" *Id.*

The case for Article 6 liability is even stronger here than in *Giuntoli*. First, the plaintiff in *Giuntoli* managed a "desk" within a department, but was seeking a bonus based on the profitability of the entire department. 726 F.Supp. at 494. Here, by contrast, the mandatory Profits Bonus and Accrued Profits Bonus are based *solely* on the profits of the entities for which *Jensen was the highest-ranking executive* (namely, the two Healthcare Advisors that served as critical profit centers for the Company), and those mandatory bonuses stand in sharp contrast to Jensen's partly-discretionary "Annual Bonus," which is based in part on *the Company's* (i.e., *not* the two Healthcare Advisors') overall success.

11

Moreover, the profits bonus in *Giuntoli* was not based on a specific formula, such as a percentage of net profits. Instead, its basis was less clear and would ultimately require an analysis of employees' "[b]onus histor[ies]" to discern whether or not "there exists a reasonable basis for calculating the bonus due[.]" *Id.*, 726 F. Supp. at 508. Here, by contrast, the mandatory Profits Bonus and Accrued Profits Bonus is based on a specific formula (4% of the two Healthcare Advisors' net profits) which "can easily be defined by reference to an extrinsic standard." See, e.g., *Arthur the Dog*, *supra*, 2007 U.S. Dist. LEXIS 63885, at *19 (E.D.N.Y. Aug. 28, 2007) (Bianco, J.).

Accordingly, the Complaint adequately pleads that Jensen's mandatory Profits Bonus and Accrued Profits Bonus were "expressly linked" to his "labor or services personally rendered"; namely, his work as President and CEO of the two Healthcare Advisors and the REITs they managed. *Ryan v. Kellogg Partners Institutional Servs.*, 19 N.Y.3d 1, 16 (2012) ("Unlike the situation in [*Truelove v. Ne. Capital & Advisory, Inc.*, 95 N.Y.2d 220, 224 (2000)], Ryan's bonus was 'expressly link[ed]' to his 'labor or services personally rendered' (95 NY2d at 224); namely, his work as a floor broker for Kellogg."); Cplt. ¶¶ 140-141 (Jensen was responsible for generating the profits on which his bonus was based).

Further, the Complaint adequately pleads that Jensen's mandatory Profits Bonus and Accrued Profits Bonus were earned and vested under the terms of the Employment Agreement when Defendants terminated him *not*-for-cause, and that the payment thereof was guaranteed and non-discretionary as a term and condition of his employment. *Ryan*, *supra*, 19 N.Y.3d at 16 ("Further, Ryan's bonus had been earned and was vested before he left his job at Kellogg; its payment was guaranteed and non-discretionary as a term and condition of his employment (*see Giuntoli v Garvin Guybutler Corp.*, 726 F Supp 494, 509 [SD NY 1989] ['bonus payments,

12

already due and vested . . . fall within the definition of wages in § 190'][.]"); See, e.g., Cplt. ¶¶ 83, 125, 137, 150.

Contrary to Defendants' argument, courts have generally held that an Article 6 claim lies where, as here, the non-discretionary bonus is based on the profits of the unit or entity that the plaintiff held an important position in, or was in charge of.  For example, in *Friedman v. Arenson Office Furnishings Inc.*, *supra*, 129 A.D.3d 525 (1st Dept. 2015), the Appellate Division affirmed the denial of the defendant's motion for summary judgment dismissing a division manager's Article 6 claim for a share of her division's net profits, stating:

> In the event that plaintiff can establish that her division earned net profits during the periods in question, payment of the bonuses would be non-discretionary and based upon services plaintiff rendered as the manager of a newly created division to be run by her (*see Ryan v Kellogg Partners Inst. Servs.*, 79 AD3d 447, 449, 914 NYS2d 81 [1st Dept 2010], *affd* 19 NY3d 1, 968 NE2d 947, 945 NYS2d 593 [2012]), and not "upon [the] employer's overall financial success" (*Truelove* at 224).

*Id.*, 129 A.D.3d at 525; see also *Freedom Home Mortg. Corp. v. Platinum Home Mortg. Corp.*, 2015 U.S. Dist. LEXIS 39816, at *34-35 (N.D.N.Y. Mar. 30, 2015) (to same effect); *Figura v. N. Country Janitorial, Inc.*, 53 Misc. 3d 881, 884 (N.Y. Sup. 2016) (to same effect).

Similarly, in *Fischkoff v. Iovance Biotherapeutics, Inc.*, 2018 U.S. Dist. LEXIS 112839, at *13-14 (S.D.N.Y. July 5, 2018), the court denied dismissal of the plaintiff's Article 6 claim for incentive compensation payable in addition to the plaintiff's $400,000 salary. Consistent with *Ryan's* conclusion that "bonus payments, already due and vested . . . fall within the definition of wages in § 190" (19 N.Y.3d at 16 (citing *Giuntoli*, *supra*, 726 F Supp at 509 for that proposition)), the *Fischkoff* Court stated that: "In determining whether compensation constitutes 'wages' under the NYLL, 'the dispositive factor . . . is not the labeling of the plan but whether the compensation is vested and mandatory as opposed to discretionary and forfeitable.'" *Id.*,

2018 U.S. Dist. LEXIS 112839, at *11-12 (citing *Truelove v. Northeast Capital & Advisory Inc.*, 268 A.D.2d 648, 649 (3d Dep't 2000)).

Notably, Fischkoff's claim was far less strong than Jensen's because it involved a partly-discretionary/partly-non-discretionary incentive compensation "program," and it was not, as here, so integral to the plaintiff's overall employment compensation that it would exceed his salary or that the plaintiff would refuse to be employed unless he received it. Nonetheless, the *Fischkoff* Court denied dismissal because "As Vice President and Chief Medical Officer of Lion, Plaintiff held a senior-level position. It is, therefore, plausible that the 'Company' objectives on which the Incentive Compensation depends are tied to Plaintiff's individual performance." *Id.* Here too, Jensen's claim is stronger than the claim in *Fischkoff* because Jensen held not merely "a senior-level position"; he held the *top* position.

Likewise, in *Grober v. Bronson*, 2013 N.Y. Misc. LEXIS 696, at *19-21 (N.Y. Sup. 2013) the court denied dismissal of a portfolio manager's Article 6 claim for contractually owed additional compensation based on a share of the employer's profits. The *Grober* Court analyzed *Truelove*, *Ryan* and *Giuntoli*, and stated:

> Here, according to a fair reading of the complaint, the "percentage of the profits" of the firm was merely a means of measuring the amount of plaintiffs' compensation, which was tied to their services, and was not meant to reward them with a bonus based on the success of the firm's business. As alleged in the complaint, it was a means of measuring the compensation that they would receive in consideration for their labor and services. Hence, the allegations in the complaint bring the claims here closer to those in *Ryan v Kellogg Partners Inst. Servs.* than those in *Truelove v Northeast Capital & Advisory.*

Unlike the plaintiffs in *Giuntoli*, *Fischkoff* and *Grober*, all of whom stated valid Article 6 claims based on the results of a division or entity *larger than the ones they ran*, Jensen's claim is for an earned and 100% non-discretionary bonus of two entities for which *he was the top officer*.

Indeed, Jensen's role in generating profits was so vital that he *also* served as the top officer of the two REITs that the two Healthcare Advisors managed. Cplt. ¶¶ 68, 141. Moreover, Jensen's Accrued Profits Bonus was required to be adjusted to correspond to the exact number of days his services were rendered during his final period of employment (Cplt. ¶ 80[A]), an arrangement that stands in sharp contrast to bonuses which are not recoverable if the employee is no longer employed on the date they are to be calculated.  Finally, and most important, *the Complaint pleads that Jensen was responsible for the profitability of the two entities on which his Profits Bonus was based*. Cplt. ¶¶ 140-41.

Accordingly, there is a *much* "more direct relationship between [Jensen's] own performance and the [Profits Bonus] to which [he] is entitled" than "a share in [a] bonus pool [that is] entirely discretionary and subject to the non-reviewable determination of his employer." *Truelove v. Ne. Capital & Advisory, Inc.*, 95 N.Y.2d 220, 224 (2000).  Stated differently, Jensen is not seeking to recover "a share in *a reward to all employees* for the success of the employer's entrepreneurship," *Id.,* 95 N.Y.2d at 224 (emphasis added), much less a "discretionary" share in such a reward (*Truelove*); rather, he is seeking to recover a fully-vested 100% non-discretionary bonus that he *earned*.

The cases Defendants rely on are easily distinguishable. In *Tischmann v. ITT/Sheraton Corp.*, 882 F. Supp. 1358, 1370 (S.D.N.Y. 1995) it was "undisputed that the Incentive Plan permits Sheraton to determine what amount, if any, should be paid to a participating employee in addition to the regular guaranteed salary." *Id.*  Jensen's case presents the *opposite* situation. Moreover, the *Tischmann* Court approvingly cited *Giuntoli*, *supra*, for the proposition that an Article 6 claim lies where "the employee was guaranteed a bonus payment as a term of employment." *Tischmann*, *supra*, 882 F. Supp. at 1370.

15

In *Levion v. SociÉtÉ GÉnÉrale*, 822 F. Supp. 2d 390, 404 (S.D.N.Y. 2011), aff'd 503 F. App'x 62, 64 (2d Cir. 2012) "there simply was no contract or legally enforceable agreement" to pay the bonus sought.  822 F.Supp.2d at 401. Again, this case presents the *opposite* situation. Moreover, while *Levion* does contain some general language that at first blush sounds helpful to Defendants' position, such language is inapposite because *Levion* also made clear that dismissal would *not* have occurred had there been a contract guaranteeing the bonus. 822 F.Supp.2d at 404 ("Thus, *absent a contract guaranteeing such a bonus*, Plaintiff's Labor Law claims must be dismissed.") (emphasis added).

The last case Defendants cite on this issue is *Samuels v. Thomas Crimmins Contracting Co.*, 1993 U.S. Dist. LEXIS 1336, at *22 (S.D.N.Y. 1993) (Sotomayor, J.), which concerned the plaintiff's right to a share of a potential future settlement of a pending claim between the defendant and a third party.  *Samuels* is inapposite for four reasons. First, the agreement in *Samuels* was not even tied to the plaintiff's employment. *Id.*, at *21 (the agreement was "not tied to [Samuels'] labor or services or even continued employment with the company."). Here, by contrast, Jensen's mandatory Profits Bonus and Accrued Profits Bonus were tied to both Jensen's service *and* to his continued employment, with Jensen's Accrued Profits Bonus adjusted based on the exact number of days he worked. Cplt. ¶¶ 79, 120, 137-41.

Second, unlike the plaintiff in *Samuels*, who "was not asked to perform any additional or different responsibilities" for the compensation at issue (*Id.*, 1993 U.S. Dist. LEXIS 1336, at *20), Jensen was asked to and did perform additional responsibilities for the compensation at issue when he reconsidered his decision to quit, and agreed to serve as the Healthcare Advisors' highest-ranking executive at the time the Employment Agreement was amended to provide him the right to a 4% Profits Bonus and Accrued Profits Bonus. Cplt. ¶¶ 74-76, 80(A).

16

Third, *Samuels* was decided after trial, not on a motion to dismiss. See Point III.C below.

Finally, *Samuels* was decided long before the Court of Appeals made clear that "bonus payments, already due and vested . . . fall within the definition of wages in § 190." *Ryan*, *supra*, 19 N.Y.3d at 16 (citing *Giuntoli*, *supra*, 726 F Supp at 509); see also *Giuntoli*, *supra* (rejecting argument that "incentive bonuses, based on profitability, also do not fall under the NYLL's definition of 'wages'.") and Point III.D below.

### C.    The Issue of Whether Unpaid Compensation Constitutes a Discretionary Bonus or Nonforfeitable Earned Wages is a Question of Fact

"New York courts have held that the issue of 'whether unpaid compensation constitutes a discretionary bonus or nonforfeitable earned wages is a question of fact.'" *Bader v. Wells Fargo Home Mortg., Inc.*, 773 F. Supp. 2d 397, 416 (S.D.N.Y. 2011); *Aledia v. HSH Nordbank AG*, 2009 U.S. Dist. LEXIS 24953, at *6-7 (S.D.N.Y. Mar. 23, 2009); *Kolchins v. Evolution Mkts., Inc.*, 128 A.D.3d 47, 64 (1st Dept. 2015), aff'd 31 N.Y.3d 100, 110 (2018); *Patterson v. J.P. Morgan Chase & Co.*, 2004 U.S. Dist. LEXIS 17135, at *29 (S.D.N.Y. Aug. 26, 2004); *Ryan v. Kellogg Partners Institutional Servs.*, 79 A.D.3d 447, 448 (1st Dept. 2010), aff'd 19 N.Y.3d 1, 7 (2012).

"However, where an employee's contract either leaves the bonus in the employer's discretion or conditions it on an event that has not occurred, such as employment through a specific date, courts have decided such questions as a matter of law." *Bader*, *supra*, 773 F. Supp. 2d at 416 (citation omitted); but see *Kolchins*, *supra*, 31 N.Y.3d at 110 (clarifying that in some circumstances "[a contract] provision…that would operate to deny plaintiff those wages after they were 'earned' based on the timing of payment would be void as against public policy under article 6 of the Labor Law").  Neither of these circumstances apply here.  The bonuses at

issue were earned, vested and 100% non-discretionary, and not conditioned on an event that hasn't occurred.

Accordingly, for this reason, as well as the reasons discussed in Point III.D below, dismissal would be inappropriate as a matter of law.

**D.    Incentive Compensation is "Earned" When the Right to Payment is Vested and Not Conditioned on Some Future Occurrence or Left to the Employer's Discretion**

Many Article 6 cases involve disputes over the recovery of bonuses that are discretionary or partly-discretionary, see, e.g., *Denhaese v. Buffalo Spine Surgery, PLLC*, 144 A.D.3d 1519, 1520 (4th Dept. 2016) (denying dismissal of § 193 claim because "there are questions of fact whether the payment of plaintiff's bonuses was solely within the discretion of defendant"), or whether the employer can condition the employee's right to payment on being employed at the time the compensation is calculated or paid. See, e.g., *Kolchins v. Evolution Mkts., Inc.*, 31 N.Y.3d 100, 110 (2018) ("To the extent the production bonus was not discretionary and, instead, was based only on plaintiff's performance as a manager during his final trimester of employment—a question not conclusively answered by the language of the agreement—the bonus could constitute nonforfeitable 'wages.' In that event, any provision of the 2009 agreement that would operate to deny plaintiff those wages after they were 'earned' based on the timing of payment would be void as against public policy under article 6 of the Labor Law.").

However, courts need not grapple with such difficult questions once the employee's right to the employment compensation has vested because "[a]n employee's incentive compensation is 'earned' when [as here] the employee acquires a vested interest in the award and its payment is not conditioned upon some occurrence or left to the discretion of the employer." *DeWitt Stern Grp., Inc. v. Eisenberg*, 257 F. Supp. 3d 542, 591 (S.D.N.Y. 2017), aff'd 734 F. App'x 48 (2d

Cir. 2018); *Aledia v. HSH Nordbank AG*, 2009 U.S. Dist. LEXIS 24953, at *6-7 (S.D.N.Y. Mar. 23, 2009); *Quinones v. PRC Mgmt. Co. LLC*, 2015 U.S. Dist. LEXIS 88029, at *13-16 (S.D.N.Y. July 7, 2015) ("Once the compensation is earned or vested, an employer's 'neglect to pay' those 'wages' violates NYLL § 193.") (citing *Ryan*, *supra*); *Fischkoff*, *supra*, 2018 U.S. Dist. LEXIS 112839, at *11-12 ("In determining whether compensation constitutes 'wages' under the NYLL, 'the dispositive factor…is not the labeling of the plan but whether the compensation is vested and mandatory as opposed to discretionary and forfeitable.'"); *Figura v. N. Country Janitorial, Inc.*, 53 Misc. 3d 881, 884 (N.Y. Sup. 2016) (same); *Freedom Home Mortg. Corp. v. Platinum Home Mortg. Corp.*, 2015 U.S. Dist. LEXIS 39816, at *34-35 (N.D.N.Y. Mar. 30, 2015) ("[T]he critical distinction under the relevant law is not between the performance of the *individual* and the performance of the *group* but between the *nondiscretionary* nature of the payment and the *discretionary* nature of the payment.").

Accordingly, Jensen's Profits Bonus and Accrued Profits Bonus were "earned" as a matter of law because he acquired a vested interest in the payment and payment was not conditioned upon some occurrence or left to the discretion of the employer.

### Point IV

### Any Argument That § 198(3)'s Post-*Gottlieb* Rights-Affirming or Rights-Creating Language Does *Not* Mean What it Says is Incorrect as a Matter of Law

The issue of which construction of § 193 is best should be academic because the Complaint *also* seeks recovery under § 198(3). In 1993 the Court of Appeals analyzed and narrowly construed the then-existing version of § 198. *Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.2d 457, 462-64 (1993). Section 198 was thereafter amended in 1997 and again in 2011. The pre- and post-*Gottlieb* versions of § 198(3) stand in stark contrast to one another:

19

| Pre-*Gottlieb* Version of § 198(3) | Post-*Gottlieb* Version of § 198(3) |
|---|---|
| Notwithstanding any other provision of law, an action to recover upon a liability imposed by this article must be commenced within six years. | … <u>All</u> employees <u>shall</u> have the <u>right</u> to recover full wages, benefits and wage supplements and liquidated damages accrued during the six years previous to the commencing of such action… (emphasis added) |

The purpose of the amended version cannot have been to establish a statute of limitations because the pre-*Gottlieb* version *already* had the exact same statute of limitations. The question, then, is whether a court should disregard the amended law's unequivocal command that "[a]ll employees shall have the right to recover full wages, benefits and wage supplements and liquidated damages[.]"?

Courts are divided as to whether the amended version of § 198 means what it says, with some courts continuing to inexplicably rely on *Gottlieb* for the proposition that the <u>post</u>-*Gottlieb* version of § 198 *doesn't* mean what it says, see, e.g., *Contrera v. Langer*, 314 F. Supp. 3d 562, 569-70 (S.D.N.Y. 2018) (citing cases), and others—including the Second Circuit—finding or indicating that it *does* supply an independent basis for recovery. As detailed below, the latter view is plainly correct.  And even if wasn't (i.e., even if the amended version of § 198 didn't supply an independent basis for recovery), courts would still be required to choose an interpretation of § 193 that harmonizes it with § 198(3)'s command that "All employees shall have the right to recover full wages, benefits and wage supplements and liquidated damages[.]"

*Kroshnyi v. U.S. Pack Courier Servs.*, 771 F.3d 93, 96 and n.3 (2d Cir. 2014) involved claims for breach of contract and unpaid commissions in violation of NYLL §§ 193 and 198. The defendants argued that plaintiffs' claims were barred by the statute of frauds. The district court dismissed the plaintiff's § 193 claims, but the plaintiffs failed to preserve their § 193 claims for appellate review, leaving the Second Circuit to decide whether plaintiffs could maintain an Article 6 claim based *solely* on § 198. *Id.* Taking it as a given that § 198 means what it says, the

Second Circuit vacated the district court's dismissal of plaintiffs' § 198 claims and remanded the case for further proceedings consistent with its decision. *Id.* Critically, the Second Circuit's remand instructions did not include any suggestion that the district court should consider whether § 198 might *not* furnish a basis for relief.

And in *Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 264 (2d Cir. 1999), the Second Circuit *even* treated the much narrower *Gottlieb*-era version of § 198 as furnishing a basis for relief under Article 6. There, the Second Circuit affirmed a judgment in plaintiff's favor for $1.054 million plus liquidated damages based on that much narrower version of § 198 in effect when that plaintiff's Article 6 claim accrued. *Id.* Many courts have decided the issue consistent with the Second Circuit's decisions in *Kroshnyi* and *Reilly.* See, e.g., *Tini v. AllianceBernstein L.P.*, 108 A.D.3d 409, 410 (1st Dept. 2013) ("[A]s unpaid salary and commission constitute '[w]ages' under Labor Law § 190(1), plaintiff has stated a claim under Labor Law § 198."); *Cabrera v. 1560 Chirp Corp.*, 2017 U.S. Dist. LEXIS 33380, at *13 (S.D.N.Y. Mar. 6, 2017) (to same effect: "Under [§ 198], a prevailing plaintiff is entitled to recover 'the full amount of wages owed, not just the statutory minimum wage for the hours worked.'"), adopted 2017 U.S. Dist. LEXIS 53368, at *1 (S.D.N.Y. Apr. 6, 2017) (adopting "well-reasoned Report and Recommendation"); *Perelli v. Liberty Mut. Ins. Co.*, 2013 N.Y. Misc. LEXIS 901, at *2-7 (N.Y. Sup. 2013); *Hernandez v. NJK Contractors, Inc.*, 2015 U.S. Dist. LEXIS 57568, at *123 (E.D.N.Y. May 1, 2015); *Danovitch v. Gersten Savage LLP*, 2013 N.Y. Misc. LEXIS 2977, at *11 (N.Y. Sup. 2013); *Mercedes v. Tito Transmission Corp.*, 2018 U.S. Dist. LEXIS 208189, at *13 (S.D.N.Y. Dec. 6, 2018), adopted 2019 U.S. Dist. LEXIS 7900, at *1 (S.D.N.Y. Jan. 4, 2019); *Konsker v. Cushman & Wakefield, Inc.*, 2016 N.Y. Misc. LEXIS 1833, at *12 (N.Y. Sup. 2016). The *Konsker* Court later found Defendants liable under § 198, stating:

> Defendant's purposeful failure to pay employees earned wages renders defendant a wage thief and the loser. Any other conclusion would be a perversion of the record and antithetical to the purpose to New York's Labor Law and the penalties it provides to discourage such bad employer behavior.

*Id.*, 2018 N.Y. Misc. LEXIS 1102, at *2, 6 (N.Y. Sup. 2018)). Cf. *Cavalotti v. Daddyo's BBQ, Inc.*, 2018 U.S. Dist. LEXIS 154918, at *40-41 (E.D.N.Y. Sep. 8, 2018) (questioning whether *Gottlieb* has any relevance to the amended version of § 198, but not deciding issue).

There are at least *four separate reasons* why Defendants' position on this issue is incorrect as a matter of law:

First, failing to give effect to § 198(3)'s unequivocal rights-creating or rights-affirming language would be improper *even if* "total" wage thefts did not violate § 193 (which they do). That is because, as Judge Cardozo wrote in *Jacobus v. Colgate*, 217 N.Y. 235 (1916):

> [T]he grant of a remedy where none of any kind was available, is equivalent in substance to the creation of a cause of action.

*Id.*, 217 N.Y. at 242 (Cardozo, J.). See also *Shielcrawt v. Moffett*, 294 N.Y. 180, 189 (1945) ("The word 'remedy' itself conceals at times an ambiguity, since changes of the form are often closely bound up with changes of the substance."); *Hausman v. Buckley*, 299 F.2d 696, 701 (2d Cir. 1962) ("The words 'substantive' and 'procedural' or 'remedial' are not talismanic. Merely calling a legal question by one or the other does not resolve it otherwise than as a purely authoritarian performance.") (citation omitted). Accordingly, the most important factor is not the label one chooses to attach to a statute, but *the words of the statute*.

Second, "[w]here the statute is clear and unambiguous on its face, the legislation must be interpreted as it exists." *Doctors Council v. N.Y.C. Employees' Ret. Sys.*, 71 N.Y.2d 669, 674 (1988). Accordingly, § 198(3) either affirms or imposes a liability because it clearly and

22

unequivocally commands that "all employees shall have the right to recover full wages, benefits and wage supplements and liquidated damages[.]"

Third, "[i]t is a well settled tenet of statutory construction that "[t]he Legislature, by enacting an amendment of a statute changing the language thereof, is deemed to have intended a material change in the law." *Commonwealth of the N. Mar. I. v. Canadian Imperial Bank of Commerce*, 21 N.Y.3d 55, 61 (2013) (citing N.Y. Stat. § 193); *United States v. Quality Stores, Inc.*, 134 S. Ct. 1395, 1401 (2014) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.") (citation omitted).

Fourth, when interpreting a statutory amendment, "[courts] decline to read the amendment in such a way as to render some of its terms superfluous." *In re OnBank & Trust Co.*, 688 N.E.2d 245, 247 (1997); *Bank of N.Y. Tr. Co. v. Franklin Advisers, Inc.*, 726 F.3d 269, 278 (2d Cir. 2013).

And *even if* the Court does not agree that § 198(3) is also "substantive," Defendants' position would *still* fail as a matter of law because the Court must choose a construction of § 193 that can be harmonized with § 198(3)'s command that "*All employees shall have the right* to recover full wages, benefits and wage supplements and liquidated damages[.]" See *MacNeil v. Berryhill*, *supra*, 869 F.3d 109, 113 (2d Cir. 2017) ("All parts of a statute must be harmonized with each other…and effect and meaning must…be given to the entire statute and every part and word thereof[,]" quoting N.Y. Stat. § 98)). Thus, even if § 198(3)'s amended language does not create "substantive" rights, excluding "total" wage thefts from the universe of "any [unauthorized] deduction" under § 193 would nullify § 198(3)'s command that "[a]ll employees shall have the right to recover full wages benefits and wage supplements and liquidated damages"—an unacceptable result.

23

**Point V**

**The Argument That § 198-c(3)'s Exception to *Criminal* Liability Shelters Offending Employers From *Civil* Liability Under §§ 193 and 198 for Failing to Pay Earned Severance and Benefits Creates an Irreconcilable Conflict Between Article 6's Provisions, and Violates the Courts of Appeals' Core Teaching That One Section's Exclusions do Not Apply to Other Sections**

Plaintiffs' Complaint carefully explains why Jensen has a remedy as a matter of law under §§ 190(1), 193 and 198(1-a) and 198(3) for Defendants' refusal to pay his earned, fully-vested and 100% non-discretionary Accrued Benefits and Severance Pay (Cplt. ¶¶ 157-178), so there is no need to repeat those points here.

Instead of addressing the issues raised by Jensen (Cplt. ¶¶ 157-178), Defendants set up a "straw man" by asserting that *Pachter v. Hodes*, 10 N.Y.3d 609, 615 (2008) "**reaffirmed** the validity of the exclusion relating to benefits and wage supplements set forth in Labor Law § 198-c(3)." Def. Memo. at pg. 14 (emphasis in Defendants' brief). *Of course that exclusion is valid.*

The whole point is that § 198-c(3)'s exclusion (which is solely from *criminal liability*) only applies to that section, *Pachter*, *supra* (confirming that § 198-c "contains" the exclusion it references), a conclusion that accords with the Second Circuit's understanding of that statute:

> [S]ection 198-c, which makes an employer's failure to pay benefits or supplements a misdemeanor, provides that "[t]his section shall not apply to any person in a bona fide executive, administrative, or professional capacity whose earnings are in excess of six hundred dollars a week." N.Y. Labor Law § 198-c(3). Again*, the limitation appears to apply only to that particular section and sheds little light on the appropriate scope of section 193.* (emphasis added)

*Pachter v. Bernard Hodes Grp., Inc.*, 505 F.3d 129, 132 n.3 (2d Cir. 2007).

Defendants are correct that a greater number of trial-level and intermediate state appellate courts have concluded otherwise, but they have done so in error. Defendants' view—that § 198-c(3)'s limited exclusion from *criminal* liability should be somehow

applied to separate *civil* provisions of Article 6 like §§ 193 and 198—would violate *Pachter's* core teachings and create an irreconcilable conflict between the language of §§ 198-c(3) and 198(3). Rather than create such an internal conflict, this Court should follow *Pachter's* core teaching and resolve the issue in a manner consistent with § 198(3)'s unequivocal command that "*All employees* shall have the right to recover full wages, benefits and wage supplements and liquidated damages[.]"

## Point VI

### To the Extent the Law is Unsettled, That is Also a Factor That Weighs Against Dismissal

While Jensen maintains that the issue of whether Defendants' motion should be denied is not a close one, it should also be noted that courts have found that the unsettled nature of a particular area of law is a factor that weighs against dismissal. See, e.g., *Veera v. Ambac Plan Admin. Comm.*, 769 F. Supp. 2d 223, 229 (S.D.N.Y. 2011); *Freeman v. HSBC Holdings PLC*, 2018 U.S. Dist. LEXIS 127289, at *153 (E.D.N.Y. 2018); *Supra USA, Inc. v. Samsung Elecs. Co.*, 1987 U.S. Dist. LEXIS 10406, at *2 (S.D.N.Y. 1987); *Saca v. Dav-El Reservation Sys.*, 600 F. Supp. 2d 483, 488 (E.D.N.Y. 2009). Thus, to the extent this area of law is unsettled, that is a factor that weighs against dismissal.

## Conclusion

Plaintiff respectfully submits that Defendants' motion should be denied.

Dated: New York, New York  
      June 3, 2019

Law Offices of Scott A. Lucas

By: */S/ Scott A. Lucas*  
    Scott A. Lucas  
250 Park Avenue, 20th Floor  
New York, New York 10177  
(212) 983-6000  
*Attorneys for Plaintiff*