USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 3/20/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

W. TODD JENSEN,

                Plaintiff,

v.

AR GLOBAL INVESTMENTS, LLC; AR CAPITAL, LLC; ARC ADVISORY SERVICES, LLC; AMERICAN REALTY CAPITAL ADVISORS, LLC; HEALTHCARE TRUST ADVISORS, LLC; AMERICAN REALTY CAPITAL HEALTHCARE TRUST III ADVISORS, LLC; BELLEVUE CAPITAL PARTNERS, LLC and AMERICAN REALTY CAPITAL II, LLC,

                Defendants.

19-CV-657 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff W. Todd Jensen filed this action against Defendants AR Global Investments, LLC, AR Capital, LLC, ARC Advisory Services, LLC, American Realty Capital Advisors, LLC, Healthcare Trust Advisors, LLC, American Realty Capital Healthcare Trust III Advisors, LLC, Bellevue Capital Partners, LLC, and American Realty Capital II, LLC (collectively, "Defendants" or the "Company"), related corporate entities for which he used to work, alleging breach of contract and violations of the New York Labor Law ("NYLL"). Now before the Court is Defendants' partial motion to dismiss Plaintiff's NYLL claims—i.e., the Second, Third, and Fourth Causes of Action of the Amended Complaint—pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' motion is granted.

## BACKGROUND

### I. Factual Background

The following facts are drawn from Plaintiff's Amended Complaint, Dkt. 17 ("Compl."), and the exhibits attached thereto, and are assumed to be true for the purpose of resolving the pending motion. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

### A. Plaintiff's Employment Positions

Plaintiff, a citizen of Florida, was employed by Defendants in various capacities from 2011 to August 2018, when the Company terminated him. Compl. ¶¶ 4, 9, 31.[1] Plaintiff alleges that Defendants are "closely related and under common control" as they "share and are controlled by overlapping officers and directors . . . for a common purpose (to raise money and generate profits for themselves and for investors)[.]" *Id.* ¶ 53. In particular, according to Plaintiff, Defendants are "closely affiliated sponsors and advisors to three public, non-traded Real Estate Investment Trusts ('REITs') focusing primarily on healthcare-related assets, including medical office buildings and other healthcare-related facilities." *Id.* ¶ 56. The three healthcare REITs are: (1) American Realty Capital Healthcare Trust ("ARCHT"), *id.* ¶ 59; (2) Healthcare Trust Inc. ("HTI"), *id.* ¶ 62; and (3) American Realty Capital Healthcare Trust III, Inc. ("HCT III"), *id.* ¶ 65. Plaintiff states that the "business of the three healthcare REITs was to acquire [certain] properties to generate income and distribute that income as dividends to shareholders." *Id.* ¶ 57.

---

[1] Plaintiff brings this action based on the Court's diversity jurisdiction. According to the Amended Complaint, Defendants AR Global Investments, LLC ("AR Global"), AR Capital, LLC ("ARC"), ARC Advisory Services, LLC ("ARC Advisory"), American Realty Capital Advisors, LLC ("ARCA"), Healthcare Trust Advisors, LLC ("HTI Advisor"), American Realty Capital Healthcare Trust III Advisors, LLC ("HCT III Advisor"), Bellevue Capital Partners, LLC ("Bellevue Capital"), and American Realty Capital II, LLC ("ARC II") are all Delaware limited liability companies with their principal places of business in New York. *See* Compl. ¶¶ 33, 36, 39, 42, 44, 46, 48, 50-51. The members of these limited liability companies are allegedly domiciled in New York, North Carolina, Pennsylvania, Rhode Island, California, and/or Virginia. *See id.* ¶¶ 34, 37, 40, 43, 45, 47, 49, 52.

Plaintiff asserts that he was employed by Defendants, under an Employment Agreement,[2] as an "executive of the advisors to [the] three healthcare REITs" and as an "executive of the REITs themselves." *Id.* ¶ 58. Specifically, Plaintiff alleges that he served in the following positions:

- Chief Investment Officer and Executive Vice President of American Realty Capital Healthcare Advisors, LLC ("ARCHA")[3] from February 17, 2011 to approximately January 2015, *id.* ¶¶ 60-61;
- Chief Investment Officer and Executive Vice President of Healthcare Trust Advisors, LLC ("HTI Advisor")[4] from April 24, 2014 to December 18, 2015, *id.* ¶¶ 63-64;
- President of HTI Advisor from December 18, 2015 to March 7, 2016, *id.* ¶ 64;
- Interim CEO and CEO of HTI Advisor from March 7, 2016 to August 10, 2018, *id.*;
- Chief Investment Officer and Executive Vice President of American Realty Capital Healthcare Trust III Advisors, LLC ("HCT III Advisor")[5] from April 24, 2014 to December 18, 2015, *id.* ¶¶ 66-67;
- President of HCT III Advisor from December 18, 2015 to March 7, 2016, *id.* ¶ 67;
- Interim CEO and CEO of HCT III Advisor from March 7, 2016 to August 10, 2018, *id.*; and
- President and CEO of HTI and HCT III, the "healthcare REITs themselves," at some point during this time period, *id.* ¶ 68.

Plaintiff asserts that, throughout his employment, his "efforts helped generate significant fee revenue" for HTI Advisor and HCT III Advisor, of which he served as President, CEO, CIO and/or Executive Vice President starting in April 2014. *See id.* ¶¶ 79, 82.

---

[2] Plaintiff refers to the initial Employment Agreement, as well as the subsequent amendments thereto, collectively as the "Employment Agreement." *Id.* ¶ 70.
[3] ARCHA was a sponsor and advisor to ARCHT (the first REIT). *Id.* ¶¶ 59-60.
[4] HTI Advisor was an advisor to HTI (the second REIT). *Id.* ¶ 63.
[5] HCT III Advisor was an advisor to HCT III (the third REIT). *Id.* ¶ 66.

## B. The Employment Agreement[6]

Plaintiff alleges that he entered into an Employment Agreement with ARCHA on approximately February 17, 2011. *Id.* ¶ 69. He asserts that the Employment Agreement provided for "an initial two-year term, followed by successive one-year renewal terms." *Id.* ¶ 71. In November 2015, as a result of his view that the Company had failed to make certain distributions to him as required under the Employment Agreement, Plaintiff sent the Company "timely notice of non-renewal" of the Agreement. *Id.* ¶¶ 72-73. Plaintiff asserts that, because the Company was "[a]fraid of losing [him] as an employee," it "asked him to reconsider his decision," as well as whether "he would be willing to serve as President and CEO of the Company under a revised Employment Agreement." *Id.* ¶ 74. Plaintiff agreed to serve as President, and the Employment Agreement was amended on December 29, 2015. *Id.* ¶ 75.

Under the Employment Agreement, as amended on December 29, 2015, Plaintiff was entitled to two different yearly bonuses. *Id.* ¶ 77. First, Plaintiff was entitled to an "Annual Bonus," which had a "target level of 100% of Base Salary" and was "based on [Plaintiff's] performance and the performance of the Employer Company and the Healthcare REITs, as determined in the reasonable discretion of the Senior Officer." Compl. Ex. 3 ("Amended Employment Agreement") § 4(a)(vi); *see also* Compl. ¶ 78.[7] Second, Plaintiff was entitled to a "Profits Bonus," which consisted of "4% of the annual net profits of each of the Healthcare Advisors." Amended Employment Agreement § 4(b)(ii); *see also* Compl. ¶ 79. In order to receive the Profits Bonus for the prior year, Plaintiff was also required to be "employed at the time the

---

[6] According to Plaintiff, ARC Advisory, ARC, ARCA, and ARC II are "direct parties and signatories" to the Employment Agreement, while AR Global, HTI Advisor, HCT III Advisor, Bellevue Capital, and ARC II are "the affiliates and third-party beneficiaries" of the Agreement. *Id.* ¶¶ 53-54.

[7] The "Employer Company" is defined as ARC Advisory. *See* Amended Employment Agreement at 1. The "Healthcare REITs" are defined as HTI and HCT III. *See id.* § 2(a). The "Senior Officer" is defined as the CEO of the "Healthcare Advisors" and the "senior management" of ARC Advisory. *See id.* § 2(b). The "Healthcare Advisors" are defined as HTI Advisor and HCT III Advisor. *See id.* § 2(a).

4

Profits Bonus and Annual Bonus are paid in the regular course of business." Amended Employment Agreement § 4(b)(ii).

Plaintiff asserts that the Profits Bonus was "such an integral part of [his] work compensation" that he "would not have agreed to be reemployed after having given his notice of non-renewal of the Employment Agreement unless the Company agreed to pay an annual mandatory 4% Profits Bonus, which it agreed to do." Compl. ¶ 138. He also asserts that he "expected the mandatory 4% Profits Bonuses to exceed his salary, and, consistent with that expectation, his earned but unpaid Profits Bonuses did exceed his salary." *Id.* Plaintiff contends that, "[i]n clear contrast to the partly-discretionary 'Annual Bonus,' which is based in part on *the Company's* overall performance," the "4% Profits Bonus" is "mandatory" and "based solely on the net profits of the two specific Healthcare Advisors for which [he] served as President and CEO (interim and otherwise)." Compl. ¶ 120; *see also id.* ¶ 139 ("[Plaintiff's] mandatory 4% Profits Bonus were expressly based on the results he achieved as President and CEO . . . for two specific healthcare advisors (HTI Advisor and HCT III Advisor) which served as critical profit centers for the Company."). Plaintiff contends that the net income of HTI Advisor and HCT III Advisor (the two Healthcare Advisors) "depended primarily on the asset management fees it received," and that he "was the executive officer primarily responsible for acquiring the properties on which the Healthcare Advisors' asset management fees (the principal source of the Healthcare Advisors' income) were based, and for aggregating those assets." *Id.* ¶ 140. Plaintiff states that, as President and CEO, his "responsibility for the profitability of HTI Advisor and HCT III Advisor was so paramount that [he] agreed to also serve as, and did serve as, President and CEO (interim and otherwise) of the two healthcare REITs that those entities advised (HTI and HCT III)," *id.* ¶ 141, and that he was "instrumental in helping raise the equity capital that enabled those REITs to buy

5

the properties they acquired," *id.* ¶ 142.

The Employment Agreement was amended again on March 7, 2016, when Plaintiff agreed to serve as CEO of HTI Advisor and HCT III Advisor. *Id.* ¶ 76. The March 2016 Amendment did not alter the Annual Bonus or Profits Bonus set forth in Sections 4(a)(vi) or 4(b)(ii). *See* Compl. Ex. 4 ("Second Amended Employment Agreement").[8]

Pursuant to the Employment Agreement, if Plaintiff was terminated without Cause, he was entitled to receive certain additional payments. For instance, upon a termination without Cause, Plaintiff was entitled to receive an "Accrued Profits Bonus," which was defined as "the proportionate share of the Profits Bonus through the Term Date but unpaid to [Plaintiff], calculated and payable to [Plaintiff] at the same time it would have been had [his] employment not been terminated." Amended Employment Agreement § 5(c)(v); *see also* Compl. ¶ 80(A) (alleging that Plaintiff was entitled to receive "a pro rata share of the mandatory Profits Bonus for any partially completed year of service"). Plaintiff was also entitled to receive "Accrued Benefits," which consisted of "all other applicable payments or benefits to which [Plaintiff] shall be entitled under, and paid or provided in accordance with, the terms of this Agreement, and/or the terms of any applicable arrangement, plan or program" of the Company. Amended Employment Agreement § 5(c)(iii); *see also* Compl. ¶ 80(B) (defining Accrued Benefits as "consisting of the value of accrued vacation and personal days"). Finally, Plaintiff was entitled to receive "Severance Payments," which were defined as "continued payment of [Plaintiff's] Base Salary for twelve (12) months immediately following termination." Amended Employment Agreement § 5(c)(vi); *see also* Compl. ¶ 80(C) (alleging that Plaintiff was entitled to "[o]ne year's salary as severance"). The March 2016 Amendment did not alter any of the provisions set forth in Section 5. *See* Second

---

[8] As relevant to these provisions, the March 2016 Amendment changed the definition of "Senior Officer" to include only the "senior management" of ARC Advisory. *See* Second Amended Employment Agreement § 2(b).

Amended Employment Agreement.

### C. Plaintiff's Termination

On August 10, 2018, the Company notified Plaintiff, "verbally and in writing, that it was exercising its right to terminate his employment *not*-for-cause." Compl. ¶ 85. Although the Notice of Termination sent to Plaintiff on August 10, 2018 does not specify whether his employment was being terminated with or without cause, *see* Compl. Ex. 5, Plaintiff alleges that he "specifically confirmed at the time with the Company that it was a *non*-cause termination." Compl. ¶ 86. Plaintiff contends that the Company subsequently "retroactively '*recharacterized*' [his] *non*-Cause termination notice . . . as a 'for Cause' termination notice." *Id.* ¶ 94. He states that "[a]s to the purported 'Cause'" for his termination, "the Company claimed that four years earlier [Plaintiff] had allegedly neglected to notify top management of risk factors referenced in a 'due diligence' report provided in connection with a large investment opportunity." *Id.* ¶ 95. In a letter sent to Plaintiff on November 10, 2018, the Company's prior counsel explained that, based on Plaintiff's "willful misconduct" and/or "breach of fiduciary duty," which was apparently discovered after his departure, the Company had "recharacterized the termination of [his] employment as a termination for Cause for purposes of [his] Employment Agreement." *See* Compl. Ex. 8 at 2.[9]

### II. Procedural History

Plaintiff filed this action on January 23, 2019, Dkt. 1, and filed an amended complaint—the operative complaint—on April 4, 2019, Dkt. 17, asserting claims for breach of contract and violations of NYLL §§ 190, 193, 198(3), and 198(1-a). On May 13, 2019, Defendants filed a partial motion to dismiss Plaintiff's claims under the NYLL—i.e., the Second, Third, and Fourth

---

[9] Defendants contend that it is irrelevant "for purposes of this motion whether Plaintiff's employment was terminated with or without Cause." *See* Defs. Mot., Dkt. 25, at 4 n.4. As Plaintiff does not directly address this contention in his opposition, the Court does not decide whether Plaintiff was terminated with or without Cause at this time.

Causes of Action in the Amended Complaint. Dkt. 24. Plaintiff filed his opposition on June 3, 2019, Dkt. 31, and Defendants replied on June 24, 2019, Dkt. 34.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (citation omitted). In answering this question, the Court must "accept[] all factual allegations as true, but 'giv[e] no effect to legal conclusions couched as factual allegations.'" *Stadnick*, 861 F.3d at 35 (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)). Moreover, on a motion to dismiss, courts "may consider any written instrument attached to the complaint, statements or document incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Grp. Inc.*, No. 11 Civ. 559 (LTS) (JLC), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012).

## DISCUSSION

Plaintiff claims that Defendants violated the NYLL by withholding his Profits Bonuses (Second Cause of Action), Severance Pay (Third Cause of Action), and Accrued Benefits (Fourth Cause of Action).[10] For the reasons discussed below, Plaintiff fails to plausibly allege facts sufficient to sustain these causes of action.

### I. NYLL §§ 190, 198(3), and 198(1-a) Do Not Provide Independent Causes of Action

As an initial matter, the Court agrees with Defendants that, although Plaintiff cites NYLL §§ 190, 193, 198(3), and 198(1-a) in the Amended Complaint, only Section 193 provides for an independent cause of action. Plaintiff therefore cannot maintain independent claims for Defendants' alleged violations of Section 190, 198(3), or 198(1-a).

First, Section 190 merely contains definitions to be used in Article 6 of the NYLL. *See* N.Y. Lab. Law § 190; *see also Thind v. Healthfirst Mgmt. Servs., LLC*, No. 14 Civ. 9539 (LGS), 2015 WL 4554252, at *5 (S.D.N.Y. July 29, 2015) ("NYLL [section] 190 is merely a 'definition section' and does not create a cause of action."). Second, "Section 198 sets forth a remedial scheme for recovering benefits owed by some other provision of the NYLL, but does not create obligations giving rise to an independent cause of action." *Marshall v. UBS Fin. Servs., Inc.*, No. 14 Civ. 4384 (JGK), 2015 WL 4095232, at *5 (S.D.N.Y. July 7, 2015); *see also Fallman v. Hotel Insider Ltd.*, No. 14-cv-10140 (SAS), 2016 WL 316378, at *8 (S.D.N.Y. Jan. 15, 2016) ("Section 198, however, does not create a cause of action, and is 'limited to actions for wage claims founded on the substantive provisions of Labor Law article 6.'") (quoting *Gottlieb v. Kenneth D. Laub &*

---

[10] Plaintiff's First Cause of Action, for breach of contract, is not at issue in the present motion. The Court notes, however, that if Plaintiff's breach of contract claim were to fail, his NYLL claims would necessarily fail as well. *See O'Grady v. BlueCrest Capital Mgmt. LLP*, 646 F. App'x 2, 4 (2d Cir. 2016) ("The failure of [plaintiff's] contract claim also necessarily defeats his wage claim under New York Labor Law § 193."); *Tierney v. Capricorn Inv'rs, L.P.*, 592 N.Y.S.2d 700, 703 (App. Div. 1993) (holding that a plaintiff "cannot assert a statutory claim for wages under the Labor Law if he has no enforceable contractual right to those wages"). The Court thus assumes, for purposes of this opinion only, that Plaintiff has a valid breach of contract claim.

9

*Co.*, 82 N.Y.2d 457, 459 (1993)); *Malinowski v. Wall St. Source*, No. 09 Civ. 9592 (PAE), 2012 WL 279450, at *2 (S.D.N.Y. Jan. 31, 2012) ("Indeed, by its terms, § 198(3) applies only to an action to recover upon a liability imposed by this article; it therefore does not supply a freestanding right to relief.") (internal quotation marks and citation omitted); *Khurana v. Wahed Invest, LLC*, No. 18-CV-233 (LAK) (BCM), 2019 WL 1430433, at *13 (S.D.N.Y. Feb. 26, 2019), *report and recommendation adopted,* 2019 WL 1432589 (S.D.N.Y. Mar. 29, 2019) ("[Section] 198(1-a) does not provide any substantive rights; it merely lists the remedies available for violations of the substantive provisions of the NYLL, which are set out elsewhere in Article 6 of the NYLL.").

Plaintiff cites *Kroshnyi v. U.S. Pack Courier Services, Inc.*, 771 F.3d 93 (2d Cir. 2014) and *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253 (2d Cir. 1999) for the proposition that Section 198 provides an independent basis for recovery. *See* Pl. Opp'n, Dkt. 31, at 20-21. But as Defendants point out, neither case actually analyzed whether Section 198 provides any substantive rights that could support an independent cause of action. *See* Defs. Reply, Dkt. 34, at 2-3. Nor did these cases reference *Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.2d 457 (1993), in which the New York Court of Appeals held that Section 198 "was intended merely to afford procedural rules, including costs and cost-related remedies, to apply in actions brought for wage claims created under the substantive provisions of Labor Law article 6." 82 N.Y.2d at 464; *see also Contrera v. Langer*, 314 F. Supp. 3d 562, 570 (S.D.N.Y. 2018) (explaining that the Court of Appeals' holding in *Gottlieb* supports the conclusion that Section 198 "does not stand alone," but rather "sets forth the remedies available in actions for wage claims founded on substantive provisions of Labor Law article 6") (internal quotation marks and citation omitted). Plaintiff's assertion that *Gottlieb*'s rule no longer applies to Section 198 in light of the fact that it was subsequently amended, *see* Pl. Opp'n at 19-20, is unpersuasive, especially since numerous courts continue to rely on *Gottlieb* in finding

that Section 198 does not provide an independent claim for relief. *See, e.g., Khurana*, 2019 WL 1430433, at *13; *Fallman*, 2016 WL 316378, at *8; *Gold v. Am. Med. Alert Corp.*, No. 14 Civ. 5485 (JFK), 2015 WL 4887525, at *2 (S.D.N.Y. Aug. 17, 2015).

Plaintiff is thus not entitled to relief under Section 198 unless he can show that Defendants violated another section of Article 6, or, as relevant here, that they violated Section 193. *See, e.g., Fallman*, 2016 WL 316378, at *8 ("Because there is no alleged violation of Article 6, Fallman has no claim for fees under section 198."); *Gold*, 2015 WL 4887525, at *2 ("Gold is only entitled to section 198's double recovery if he can show that [Defendant] violated section 193, the only Article 6 claim he makes."); *Wagner v. Edisonlearning, Inc.*, No. 09 Civ. 831 (SAS), 2009 WL 1055728, at *3 (S.D.N.Y. Apr. 17, 2009) ("[W]ithout a claim under the Labor Law, [plaintiff] is not entitled to liquidated damages under section 198.").

## II. Plaintiff Fails to State a Claim Under NYLL § 193

Section 193 provides that "[n]o employer shall make any deduction from the wages of an employee," except under certain enumerated circumstances not relevant here. N.Y. Lab. Law § 193. The NYLL defines wages as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." N.Y. Lab. Law § 190(1). "In order to state a claim for a violation of NYLL § 193, a plaintiff must allege a specific deduction from wages and not merely a failure to pay wages." *Goldberg v. Jacquet*, 667 F. App'x 313, 314 (2d Cir. 2016). It is well established that a "wholesale withholding of payment," however, "is not a 'deduction' within the meaning of Labor Law § 193." *Perella Weinberg Partners LLC v. Kramer*, 58 N.Y.S.3d 384, 390 (App. Div. 2017) (collecting cases). To the contrary, a "deduction" is "more targeted and direct than the wholesale withholding of wages[,] and New York courts recognize that the purpose of section 193 is to place the risk of

11

loss for such things as damaged or spoiled merchandise on the employer rather than the employee." *Goldberg*, 667 F. App'x at 314 (internal quotation marks and citation omitted); *see also Komlossy v. Faruqi & Faruqi, LLP*, No. 15 Civ. 9316 (KPF), 2017 WL 722033, at *14 (S.D.N.Y. Feb. 23, 2017), *aff'd,* 714 F. App'x 11 (2d Cir. 2017) ("[T]he majority, and more persuasive, interpretation of § 193 is that it has nothing to do with failure to pay wages or severance benefits, governing instead the specific subject of making deductions from wages.") (quoting *Malinowski*, 2012 WL 279450, at *3 n.5). Section 193 therefore "requires something more" than simply alleging a "total withholding of wages," such as "a specific instance of docking the employee's pay." *Gold*, 2015 WL 4887525, at *2. Indeed, the purpose of Section 193 "demonstrates that the 'deductions' are better understood as, and limited to, things like fines, payments, or other forms of pay docking. The list of authorized deductions in section 193 itself offers further support for that reading, as each permissible deduction is for a discrete purpose such as payment for insurance premiums, gym membership, tuition, and day care." *Id.* at *5 (citing N.Y. Lab. Law § 193(b)(i)-(xiv)).[11]

Accordingly, a plaintiff cannot sustain a claim under Section 193 if he fails to allege that his employer has withheld any specific "deduction" from his wages, as opposed to failing to pay the wages themselves. *See, e.g., Goldberg*, 667 F. App'x at 314 (affirming district court's finding that "although [plaintiff] did not receive wages to which he was entitled, his wages were not reduced in the manner prohibited by NYLL § 193"); *Komlossy*, 2017 WL 722033, at *14 ("[E]ven if the Jefferies Fee Commission were to qualify as a 'wage,' Defendants' nonpayment constitutes

---

[11] Plaintiff's contention that the "view that § 193 *only* protects against small 'targeted deductions' . . . is contrary to the rationale of this Court's decision in *Grewal v. Cuneo*, [No. 13-CV-6836 (RA), 2016 WL 308803 (S.D.N.Y. Jan. 25, 2016)]," *see* Pl. Opp'n at 4, is meritless as *Grewal* did not analyze the meaning of "deduction," and its analysis is entirely consistent with the view that Section 193 only protects against deductions. *See Grewal*, 2016 WL 308803, at *7 ("Section 193 prohibits employers from making wage *deductions* based on an employee's substandard job performance.") (emphasis added). The other cases that Plaintiff cites in his opposition, *see* Pl. Opp'n at 2-4, 3 n.1, similarly do not persuade the Court to conclude otherwise.

a failure to pay the wage, not a 'deduction' of the wage in violation of § 193."); *O'Grady v. BlueCrest Capital Mgmt. LLP*, 111 F. Supp. 3d 494, 506 (S.D.N.Y. 2015), *aff'd*, 646 F. App'x 2 (2d Cir. 2016) ("[Plaintiff's] section 193 claim fails because section 193 applies to amounts *deducted* from wages, not *unpaid* wages and severance, which is alleged here."); *Gold*, 2015 WL 4887525, at *5 (holding that a "section 193 claim requires plaintiff to allege a specific withholding of wages"); *cf. Goldberg*, 667 F. App'x at 314 n.1 ("Wholesale withholding of wages is covered by NYLL § 191, which . . . does not apply to the plaintiff because he was an executive and therefore exempt from this provision.").[12]

Regardless of whether the Profits Bonus, Severance Pay, or Accrued Benefits constitute "wages" under the NYLL, all three of Plaintiff's causes of action fail because he does not plead that Defendants have withheld any *deductions* from these forms of payment. Rather, it is clear from the Amended Complaint that Plaintiff's NYLL claims are premised on an alleged wholesale withholding of his wages and/or "wage supplements."[13] *See, e.g.*, Compl. ¶ 24 ("Defendants are .

---

[12] This conclusion is further bolstered by the fact that a "breach of contract action already sufficiently protects an employee's rights to his total earned wages and does not need further reinforcement," while "[t]he other sections of Article 6 'strengthen and clarify' the employee's right to wages[,] . . . would not necessarily be protected in a bread-and-butter breach of contract claim[,] and therefore benefit from fortification by statute." *Gold*, 2015 WL 4887525, at *4. If an employee could bring a NYLL claim based on an employer's withholding of his total earned wages, then "any employee's common-law breach of contract claim [would become] actionable under section 193," resulting in the "same type of windfall that the Court of Appeals [has] cautioned against" in the context of Section 198. *Id.* at *4-5 (citing *Gottlieb*, 82 N.Y.2d at 464-65).

[13] Certain "benefits" and "wage supplements," as defined in Section 198-c, are also protected as "wages" under the NYLL. *See* N.Y. Lab. Law § 190(1). Section 198-c provides that the term "benefits or wage supplements" includes, but is not limited to, "reimbursement for expenses; health, welfare and retirement benefits; and vacation, separation or holiday pay." N.Y. Lab. Law § 198-c(2). The protections set forth in Section 198-c, however, do not apply to an employee in an executive position, such as Plaintiff. *See* N.Y. Lab. Law § 198-c(3) ("This section shall not apply to any person in a bona fide executive, administrative, or professional capacity whose earnings are in excess of nine hundred dollars a week); *Pachter v. Bernard Hodes Grp., Inc.*, 10 N.Y.3d 609, 615 (2008) (explaining that "several provisions in article 6 make specific reference to the exclusion of executives," including Section 198-c(3), which excludes executives from protection "relating to benefits and wage supplements"); *Malinowski*, 2012 WL 279450, at *3 (finding that plaintiff cannot "prevail by arguing that his bonuses should be construed as mandatory 'benefits or wage supplements,' a subject addressed by § 198-c of Article 6," because "[a]s an executive whose weekly earnings exceeded $900, [plaintiff] is ineligible from seeking relief under § 198-c"). It is undisputed that Plaintiff was an "executive," *see* Compl. ¶¶ 58, 61, 64, 67-68; Pl. Opp'n at 1, and thus, even if he had alleged specific deductions to his Accrued Benefits or Severance Pay—which he does not—he still could not recover under the NYLL with respect

. . liable as a matter of law for breaching the Employment Agreement and keeping [Plaintiff's] earned bonuses, accrued benefits and severance pay."); *id.* ¶ 93 ("[T]he Company decided to enrich itself by permanently keeping everything it owed [Plaintiff]."); *id.* ¶ 156 (alleging that Defendants are liable under the NYLL for "neglecting and refusing to pay [Plaintiff's] . . . Profits Bonuses and Accrued Profit Bonus"); *id.* ¶ 161 ("Defendants' failure and refusal to pay [Plaintiff's] Accrued Benefits and severance pay violated § 193, as well as § 198[.]"); *id.* ¶ 174 (alleging that Defendants are liable under the NYLL for "neglecting and refusing to pay [Plaintiff] his 12 months of severance pay"); *id.* ¶ 178 (alleging that Defendants are liable under the NYLL for "neglecting and refusing to pay [Plaintiff's] Accrued Benefits"); *see also* Pl. Opp'n at 1 ("Defendants decided to give themselves a windfall by targeting *all* of [Plaintiff's] unpaid earnings (i.e., his 2017 4% Profits Bonus, his 4% Accrued Profits Bonus, his Accrued Benefits, and his Severance Pay[.]") (emphasis in original); *id.* (characterizing Defendants' actions as "wholesale wage theft").

Plaintiff does not attempt to argue that Defendants have withheld any specific deductions from his wages. Instead, while admitting that "some courts" have adopted the view that NYLL § 193 is inapplicable to wholesale withholding of wages, Plaintiff contends that such holdings are "foreclosed by binding Court of Appeals' precedent" from *Ryan v. Kellogg Partners Institutional Services*, 19 N.Y.3d 1 (2012), *see* Pl. Opp'n at 2, or that those cases were decided in error, *id.* at 6. The Court disagrees. As a preliminary matter, *Ryan* addressed whether a particular bonus constituted "wages" within the meaning of the NYLL, and held that a bonus constitutes "wages" under NYLL § 190(1) when it is "expressly link[ed] to [the employee's] labor or services personally rendered," "guaranteed and non-discretionary as a term and condition of his

---

to these "benefits or wage supplements." The Court rejects Plaintiff's assertion that Section 198-c(3) applies only to "criminal liability." *See* Pl. Opp'n at 24-25. Among other things, such an interpretation "ignores the text of the section, [entitled] 'Benefits [or] Wage Supplements,' which states '[*t*]*his section* shall not apply to any person . . . .'" *See Wagner*, 2009 WL 1055728, at *3.

14

employment," and "had been earned and was vested before [the employee] left his job." *Ryan*, 19 N.Y.3d at 16 (internal quotation marks omitted). But *Ryan* did not consider—let alone conclusively determine—the meaning of "deduction" under the statute. As other courts have thus concluded, since "[t]he [*Ryan*] court did not squarely address what qualifies as a deduction, . . . [*Ryan*] is not particularly helpful here." *Gold*, 2015 WL 4887525, at *4; *see also Komlossy*, 2017 WL 722033, at *14, 14 n.8 (agreeing with *Gold* that cases such as *Ryan* "explicitly frame[d] their analysis as interpreting the definition of 'wages,' not 'deduction,'" and that "a broad reading of 'deduction' is inconsistent with the NYLL's purpose and statutory framework"); *Perella Weinberg*, 58 N.Y.S.3d at 390 (noting that the issue of whether "a wholesale withholding of payment is . . . a 'deduction' within the meaning of Labor Law § 193 . . . was not addressed by the Court of Appeals in *Ryan*").

In sum, because Plaintiff alleges that Defendants have withheld the entirety of his Profits Bonuses, Severance Pay, and Accrued Benefits, and has not alleged any specific *deductions* of those purported wages, Plaintiff fails to state a claim under NYLL § 193. And because Plaintiff has no claim under Section 193, he is also not entitled to any relief under Section 198. *See, e.g., Gold*, 2015 WL 4887525, at *2.[14] Defendants' motion to dismiss Plaintiff's NYLL claims is therefore granted.

---

[14] Because Plaintiff fails to allege any specific deductions to the Profits Bonus, the Court does not reach the issue of whether his Profits Bonus was "guaranteed," "non-discretionary," and tied to his own performance, thereby protected as statutory "wages." *See Ryan*, 19 N.Y.3d at 16. Nor need the Court address whether it was instead "discretionary," "dependent, at least in part, on the financial success of the business enterprise," and/or based on factors "outside the scope of [his] actual work," and therefore inactionable under Section 193. *See Truelove v. Northeast Capital & Advisory, Inc.*, 95 N.Y.2d 220, 224 (2000); *see also Fischkoff v. Iovance Biotherapeutics, Inc.*, No. 17 Civ. 5041 (AT) (GWG), 2018 WL 4574890, at *4 (S.D.N.Y. July 5, 2018) ("When considering bonus payments, courts in the Second Circuit have distinguished between bonuses conditioned on an employee's individual performance and those conditioned on the performance of a group of employees or the company as a whole. The consensus is that bonuses conditioned on individual performance constitute wages under the NYLL, while bonuses conditioned on group or company-wide performance do not.") (collecting cases).

## CONCLUSION

For the reasons discussed above, Defendants' partial motion to dismiss is granted, and the Second, Third, and Fourth Causes of Action are dismissed. The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 24.

SO ORDERED.

Dated: March 20, 2020
New York, New York

_____
Ronnie Abrams
United States District Judge